**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MICHAEL WOLFF,

                  Plaintiff,

      v.

MELANIA TRUMP,

                Defendant.

Case No. 1:25-cv-10752-MKV-SC

**PLAINTIFF MICHAEL WOLFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS (ECF 8-10) AND
IN SUPPORT OF HIS CROSS-MOTION TO REMAND AND FOR FURTHER RELIEF**

MILLER KORZENIK RAYMAN LLP
David S. Korzenik
Eric Rayman
The Paramount Building
1501 Broadway, Suite 2015
New York, New York 10036
dkorzenik@mkslex.com
*Attorneys for Michael Wolff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ON SUBJECT MATTER JURISDICITON AND PROPER FRAMING OF MOTIONS............................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.     The Law Governing Citizenship Warrants Remand to State Court Given Mrs. Trump's Inability and Failure to Meet Her Burden of Proof on that Issue. ...................................... 2

II.    Court Must First Assess Subject-Matter Authority Over the Case Before It Can Rule on Personal Jurisdiction. Mrs. Trump's 12(b)(2) Motion is Defective and Discovery Must Be Permitted to Resolve Any Jurisdictional Issue. .................................................................... 6

III.   The Multiple and Compound Flaws in Mrs. Trump's 12(b)(6) Motion to Dismiss Require Remand to New York State Court. ........................................................................................ 9

     A.    The Court Lacks Diversity Jurisdiction as the Amount in Controversy Has Not Been Established or Pled; and Free Speech Rights Are Too Intangible to Establish Any Amount in Controversy.............................................................................................. 10

     B.    Wolff's Causes of Action State Proper Claims for Declaratory Judgment on *Asserted* Claims for Libel, and on the *Continuation* of Asserted Libel Under N.Y. Anti-SLAPP; They also Include an Affirmative Anti-SLAPP Against Trump's §770 Claims of Libel Against Wolff. ................................................................................. 12

IV.   The Motion for § 1404(a) Transfer Has Not Even Been Properly Made, and In All Events, Must Be Denied. ................................................................................................... 15

CONCLUSION..................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Aerotel v. Sprint Corp.*,
100 F.Supp 2d 189 (S.D.N.Y. 2000) ........................................................................... 16

*Bhatti v Pettigrew*,
2012 WL 1107650, *3 (S.D.N.Y. 2012)........................................................................... 5

*Forte v. BNP Paribas*,
No. 14–CV–8556 (JPO), 2015 WL 3604317 (S.D.N.Y. 2015) ...................................... 3

*Gilman v BHC Securities*,
104 F.3d 1418 (2d Cir. 1997).................................................................................... 3, 4

*Guitierez v. Fox*,
141 F3d 425 (2d Cir. 1998)........................................................................................... 5

*Hardware v. Ardowork Corp.*,
986 NYS2d 445 (1ˢᵗ Dept. 2014) ................................................................................. 8

*Hunt v. Washington State Apple Adv. Com'n.*,
432 US 333 (1977)........................................................................................................ 11

*Imax Corp. v. The Essel Group*,
62 NYS 3d 107 (1ˢᵗ Dept. 2017) ................................................................................. 8

*JFP Touring v. Polk Theatre*,
2007 WL 797478 (S.D.N.Y. 2007)............................................................................... 16

*Johnson v Bryson*,
851 FSupp 2d 688 (S.D.N.Y. 2002) ........................................................................... 16

*Kheel v. Port of NY Authority*,
457 F.2d 46 (2d Cir 1972).................................................................................... 11, 13

*Laufer v. Ostrow*,
449 NYS 2d 456 (1982)................................................................................................. 8

*Lawrence Moskowitz CLU Ltd v. ALP, Inc.*,
2020 WL 1503558 (S.D.N.Y. 2020)............................................................................... 5

*Linardos v. Fortuna*,
157 F3d 945 (2d Cir. 1998)........................................................................................... 3

*Lupo v Human Affairs Intern., Inc.,*
28 F.3d 269 (2d Cir. 1994) .............................................................................. 3

*Melania Trump v. Mail Media, Inc.,*
No. 650661/2017 (N.Y. Sup. Ct. N.Y. Cnty. Feb. 17, 2017) ..................... 4

*Michael Wolff v. Melania Trump,*
No. 163900/2025 (N.Y. Sup. Ct. Oct. 21, 2025) ...................................... 9

*Moore v. Betit,*
511 F. 2d 1004 (2d Cir. 1975) ................................................... 11, 13

*National Artists Management Co. v. Weaving,*
769 F. Supp 1224 (S.D.N.Y. 1991) .......................................................... 3

*Platinum-Montaur Life Sci. v Navidea Pharma.,*
943 F.3d 613 (2d Cir. 2019) ......................................................... 2, 3, 16

*Popal v Slovis,*
2013 WL 1234875 (S.D.N.Y. 2013) ......................................................... 5

*Raymond v Dias de Aroujo,*
2023 WL 8947157 (S.D.N.Y. 2023) ......................................................... 4

*Williamson v. Osenton,*
34 S.Ct. 442 (1914) ................................................................................... 3

**Statutes**

28 U.S.C. § 1332 .......................................................................................... 10
28 U.S.C. § 1447 ............................................................................................ 1
28 U.S.C. § 1448 ............................................................................................ 2
Fla. Stat. § 770.01 .......................................................................... 11, 13, 17
N.Y. C.P.L.R. § 3001 .................................................................................. 10
N.Y. C.P.L.R. § 302 ...................................................................................... 9
N.Y. Civ. R. Law § 70-a ....................................................................... 13, 14
N.Y. Civ. R. Law § 76-a ............................................................................. 13

iv

Plaintiff Michael Wolff submits this Memorandum of Law in Opposition to the Motion of Defendant Melania Trump ("Mrs. Trump" or "the First Lady") to Dismiss (ECF 8-10) and in support of his Cross-Motion to Remand, and in the alternative, for discovery on the issue of citizenship and New York activities of Mrs. Trump and for further relief as set out in Wolff's Notice of Cross-Motion (ECF 11).

## PRELIMINARY STATEMENT ON SUBJECT MATTER JURISDICITON AND PROPER FRAMING OF MOTIONS

The Court was correct in the first instance to have permitted Defendant to make her Motion to Dismiss in response to her pre-motion letter (ECF 5). The Court did not then know that a Remand Motion was imminent or that citizenship would become a contested issue. The Court could not have known that until our pre-motion letter (ECF 6) which then put remand and citizenship squarely before the court and the parties.

The real error is with Defendant Mrs. Trump's counsel by persisting with the merits motion and other 12(b) grounds when subject-matter jurisdiction is not established. Any ruling on issues other than subject-matter would be a nullity if diversity jurisdiction does not exist.[1]

Even the issue of personal jurisdiction (which Mrs. Trump contests) need not be examined by the Court since the Court now has all the authority in needs under 28 U.S.C. § 1447(a) to take up that limited citizenship issue.[2]

> "In any Case removed from a State court, the district court may issue all
> necessary orders and process to bring before it all proper parties, whether served
> by process issued by the State court or otherwise." § 1447(a).

---

[1] An order denying a motion to remand is appealable while a motion to remand to state court is not appealable. 28 U.S.C. § 1447(d). There is thus all the more reason to defer consideration or matters other than diversity until citizenship is ruled on.

[2] On Remand, the State Court can take up all the issues, including personal jurisdiction and merits that Mrs. Trump has sought to raise in her motion.

Since Mrs. Trump has now brought herself before the Court on a Petition for Removal and by making Rule 12(b) motions, the Court has thus been able to "bring before it all proper parties, whether served" or not in the state court. *See* § 1447(a). Mrs. Trump certainly has appeared for the limited purpose of asserting diversity of citizenship.

Nonetheless, the Court should rule on Wolff's motion regarding notice and service of process which he initiated in State Court before the case was removed.[3] Normally, such motions initiated prior to removal should proceed in federal court. 28 U.S.C. § 1448. Mrs. Trump's denial of notice and proper service seems perverse at this stage. But the issue of service / notice should be concluded.

Accordingly, the Court should defer ruling on any other issues raised in Mrs. Trump's motion. The only issue that must be resolved at this stage is the question of whether there is actual diversity of citizenship. *Platinum-Montaur Life Sci. v Navidea Pharma.*, 943 F.3d 613, 619 (2d Cir. 2019) ("[A] district court may not proceed to the merits without first determining whether it has subject-matter jurisdiction.").

## ARGUMENT

**I.      The Law Governing Citizenship Warrants Remand to State Court Given Trump's Inability and Failure to Meet Her Burden of Proof on that Issue.**

Several principles of diversity jurisdiction are worth examining here. They show why Mrs. Trump's effort to claim Florida citizenship must fail. Her citizenship is and since she moved to the United States in the late 1990's and later became a citizen, always has been New York. She cannot prove otherwise.

---

[3] The separate issue of proper service is before the Court on the pending motion, initiated in New York state court before removal, to confirm that proper service has been accomplished or, in the alternative, to grant leave for alternative service on Mrs. Trump by email to Mrs. Trump's counsel. Mrs. Trump clearly has actual notice of this legal action. There is no reason for the Court not to take up that pending matter.

➢ Removal statutes are to be "strictly construed against removal and all doubts should be resolved in favor of remand." *Gilman v BHC Securities*, 104 F.3d 1418, 1428 (2d Cir. 1997) (quoting *Lupo v Human Affairs Intern., Inc.,* 28 F.3d 269, 274, (2d Cir. 1994)). The cases restating this foundational principle are legion. Because the right to remove a state court action is statutory, federal courts review compliance with the removal statute "narrowly, resolving any doubts against removability." *Gilman*, 104 F.3d at 1428; *Platinum-Montaur,* 943 F.3d at 617.

➢ An individual may have several "residences," but they can have only one citizenship.[4]

➢ The citizenship of a person is "where [s]he has [her] true fixed home and principal establishment, and to which, whenever she is absent, she has the intention of returning."[5]

➢ Best put, citizenship is the place which is "the center of [one's] domestic, social and civil life."[6]

➢ Where a party has more than one residence, the court will generally focus on the person's *intent*.[7]

We have addressed each of these factors and considerations in a detailed description of Mrs. Trump's very substantial and continuous ties, activities and commitments to her life in New York. *See* Declaration of David S. Korzenik dated February 9, 2026.

It is not Wolff's burden to prove Mrs. Trump's New York citizenship. The burden of proving diversity falls on the removing party. It is for Mrs. Trump to meet her strictly scrutinized

---

[4] *Williamson v. Osenton*, 34 S.Ct. 442 (1914); *Forte v. BNP Paribas*, No. 14–CV–8556 (JPO), 2015 WL 3604317 (S.D.N.Y. 2015).
[5] *Linardos v. Fortuna*, 157 F3d 945, 948 (2d Cir. 1998)
[6] *National Artists Management Co. v. Weaving*, 769 F. Supp 1224, 1227 (S.D.N.Y. 1991)
[7] *Raymond v. Dias de Aroujo*, 2023 WL 8947157, *7 (S.D.N.Y. 2023)

3

burden of proving she is a citizen of Florida. If for any reason the Court should have a question

on the issue, it should not rule on citizenship until a fair and reasonable opportunity for discovery

of the matter is allowed.[8] Any doubts must be resolved *against* removal. *See Gilman*, 104 F.3d at

1428 (citing Second Circuit authority). Thus, if there is any difficulty to the citizenship inquiry,

that in itself will militate against removal and in favor of remand.

      *Change and the Presumption of Continuation*: Mrs. Trump's effort to claim and prove

Florida citizenship runs up against yet another compounding burden. She is claiming a *change* in

citizenship. In prior litigation against *The Daily Mail* in 2017 that Mrs. Trump brought in New

York state civil supreme court, for example, she asserted that her citizenship was "New York."

*Melania Trump v. Mail Media, Inc.*, No. 650661/2017 (N.Y. Sup. Ct. N.Y. Cnty. Feb. 17, 2017).

There is no question from just the facts at hand that her citizenship continued in New York

thereafter. A party's citizenship/ domicile is *presumed to continue* after their departure from the

state unless the party with the burden of proof (i.e., Mrs. Trump) establishes that she adopted a

new domicile. *See Guitierez v. Fox*, 141 F3d 425, 427-28 (2d Cir. 1998).[9]

      *The Requirement of Clear and Convincing Evidence*: This presumption against change

cannot be overcome unless the party alleging change bears their burden with "clear and

convincing evidence" of the requisite intent to leave the former domicile, of actual acquisition of

new domicile, and of the requisite intention to remain there. *Lawrence Moskowitz CLU Ltd v.*

*ALP, Inc.,* 2020 WL 1503558, *3-4 (S.D.N.Y. 2020), *aff'd,* 830 Fed Appx. 50 (2nd Cir. 2020).

Nothing like that can be found in the well-reported facts and circumstances of Mrs. Trump's life

and activities.

---

[8] *Platinum-Montaur,* 943 F3d at 619.
[9] *Popal v Slovis*, 2013 WL 1234875, *2, *R&R adopted*, 2013 WE 4780047 (S.D.N.Y. 2013); *Bhatti v Pettigrew*, 2012 WL 1107650, *3 (S.D.N.Y. 2012).

***The Florida Citizenship Artifice*:** Mrs. Trump claim to changed citizenship is an artifice. The purpose behind it may have been an *attempt* to assist President Trump in his efforts to escape the consequences of New York judgments and lawsuits. But this Florida artifice is neither effective nor genuine as to Mrs. Trump, whose more permanent and sustained ties and personal attachments are, and always have been, to people, activities, commitments and places in New York City. Mrs. Trump's counsel sole proffer for their claim of "change" is a driver's license and a voter registration. But that goes nowhere.

*A Florida Driver's License and Voter Registration Indicate Nothing More Than a Residence.* A person can have several residences but has only one citizenship. All that is needed to get a Florida license and voter registration in terms of establishing residence is a utility bill and a rent bill. Here is all Florida requires:

a. *To obtain Voter Registration in Florida* all that one needs to show is a *passport* (or similar proof of identity) and a *Florida Driver's license*. One can do that online. *See* Fla. Dept. of State, Florida Online Voter Registration System, https://registertovoteflorida.gov/home (last visited Feb. 9, 2026).

b. *To obtain a Driver's License in Florida* all one needs is proof of identity (ie. again, a *passport*) and two forms of residence (a lease or mortgage, *rent invoice or utility bill)*. That's it. At best, a Florida license shows that you have **a** residence there. That is not citizenship. Mrs. Trump seems to think that a driver's license establishes citizenship. It does not and it could not. *See* Florida Dept. of Highway Safety and Motor Vehicles, https://www.flhsmv.gov/driver-licenses-id-cards/what-to-bring/u-s-citizen/ (last visited Feb. 9, 2026).

Thus, the Driver's License and Voter Registration establish *nothing*. It just means that someone paid a gas bill mailed to a residence associated with them. It is also hard to see what the license might mean for Mrs. Trump, who does not drive nor need to. It is one more prop for the Florida artifice, a feint. In fact, it appears that Mrs. Trump is now more heavily committed to New York than ever before. *See* Decl. of David S. Korzenik.

## II. Court Must First Assess Subject-Matter Authority Over the Case Before It Can Rule on Personal Jurisdiction. Mrs. Trump's 12(b)(2) Motion is Defective and Discovery Must Be Permitted to Resolve Any Jurisdictional Issue.

Mrs. Trump also moves to dismiss for lack of personal jurisdiction. There are numerous defects to this Rule 12(b)(2) and 12(b)(5) effort.

As a threshold issue, there are no facts delivered in the Declaration of Caryn Schectman dated January 26, 2026 except claims pertaining to service of process. There are no facts presented to support the broader 12(b)(2) part of the motion. At this stage, it is only a "half motion" challenging service of process.

The Memorandum of Law purports to reach beyond service to engage 12(b)(2) issues. But *no facts* are offered to support or even address it. Presumably, Trump is relying on a Driver's License and Voter Registration (which itself is based on an unseen Driver's License), but as explained in the Korzenik Declaration and below, that will not suffice to prove Florida citizenship or lack of personal jurisdiction in New York. If it did suffice as proof of no general jurisdiction in New York, then it follows that one can only be sued in the state in which one has a driver's license.

Mrs. Trump and her counsel have not even come close to alleging any facts that would put personal jurisdiction in play. In contrast, the Korzenik Declaration and citations do set forth the basis for Mrs. Trump's New York citizenship and her substantial and continuous ties to New

York. If for any reason it might fall short of that, then it certainly furnishes the basis for

obtaining fair and reasonable discovery into *both* jurisdictional issues.

Defendant's glib assumption that general personal jurisdiction is identical to *citizenship*,

is unsupportable. First, it would follow that just as a person can have citizenship in *only one

state*, one can only be sued in that one state. That would always be a problem in the case of any

defendant that had multiple residences. To establish personal jurisdiction as to such a defendant,

a court would have to conduct an inquiry into "the center of [a defendant's] domestic, social and

civil life" and their broader "intent" *vis a vis* their attachment to that state. That may be what is

called for as to an individual's *citizenship,* but it is not and cannot be the same inquiry for

*general personal jurisdiction.* It would have unmanageable consequences for many litigations.

Second, it has not been established that *Daimler* applies equally to individuals as it does

to corporations. It has not even been established *how* it would be adapted to individuals. The

bulk of the cases on which Mrs. Trump's counsel relies all involve actions against corporations

with tag-along claims against individual corporate officers whose activities in New York were

conducted *in their capacity as officers of the corporation* not personally.

For example, in *Imax Corp. v. The Essel Group,* 62 NYS 3d 107 (1st Dept. 2017), the

court ruled that there was no general jurisdiction over the corporate defendant in New York. The

individual officer was dismissed because New York law insulates a corporate officer from

jurisdiction over him or her personally where the officer's New York business activities were

undertaken in a personal capacity.

In *Laufer v. Ostrow*, 449 NYS 2d 456 (1982), the New York Court of Appeals chose not

to rule directly on this issue. It allowed that an individual *could* be subject to New York general

jurisdiction but that it would have to be shown that the person was conducting business in New

York in their personal capacity. What is clear is that New York courts will uphold general personal jurisdiction over non-domiciliaries who do business in New York, as was the case of an unincorporated sole proprietor. *Hardware v. Ardowork Corp.*, 986 NYS2d 445 (1st Dept. 2014).

*Daimler* does not and will not upend C.P.L.R. 301 jurisdiction over individuals, as much as Defendant's counsel hopes it might. The argument is more wishful than sound. Also, "at home" analysis for the purpose of establishing personal jurisdiction is not the same as citizenship analysis for purposes of federal diversity. These are two different standards for two different purposes.

It is hard to comprehend that Melania Trump, with all her extensive and sustained family, social, and business ties to New York, cannot be said to be "at home" in New York – even assuming that some form of *Daimler* inquiry might apply to individuals. It is conceivable that she would be subject to general subject matter jurisdiction in both New York and Florida. But again, Defendant ***has not*** put facts forward to address the "at home" or citizenship issues beyond offering up a reference to a putative unseen driver's license and some conclusory references to Florida in a Memorandum of Law. That is **not** a 12(b)(2) motion.

The Caryn Schectman Declaration does address the service of process issue under 12(b)(5). But Wolff has already moved in New York state court to address that very issue. *See Michael Wolff v. Melania Trump*, No. 163900/2025, Notice of Mot. for Alternative Service, Dkt. No. 4 (N.Y. Sup. Ct., N.Y. Cnty. filed Dec. 23, 2025). The Court should take that issue up and advise the parties whether the efforts at service suffice or whether alternative service by email will satisfy the notice requirement.

Finally, C.P.L.R. 302 transactional jurisdiction is indeed well founded. N.Y. C.P.LR § 302. Here, Mrs. Trump's agent by his § 770.01 Notice, served on Wolff in New York, committed

8

a tortious act without the state causing N.Y. Civil Rights Law § 70-a/76-a injury to Wolff in New York state. Mrs. Trump, among other things, regularly engages in any persistent course of conduct in the state and should also reasonably expect the act to have consequences in the state.

The facts supporting C.P.L.R. 302 jurisdiction are set out below in this Memorandum of Law and in the accompanying Declaration of David S. Korzenik dated February 9, 2026. Mr. Brito's 770 Notice was the commencement of process for a libel action which carried with it consequences for the 770 "defendant" (Wolff) in New York. The 770 Notice also repeatedly cited New York law. Mr. Brito now is trying to walk back that fact by saying that it was only an "unasserted claim," and "mere correspondence." That is incorrect. A 770 notice to the recipient-speaker "defendant" is indeed a SLAPP "claim" under New York anti-SLAPP law. It is precisely the kind of harm that the anti-SLAPP law was intended to interdict.

**III.    The Multiple and Compound Flaws in Mrs. Trump's 12(b)(6) Motion to Dismiss Require Remand to New York State Court.**

There are three further related issues that require remand: 1) establishing an amount in controversy, 2) assessing the existence or non-existence of a justiciable controversy and 3) the 12(b)(6) merits of Wolff's declaratory actions and one affirmative anti-SLAPP action. They are all overlapping problems. They warrant remand and further counsel declining consideration of Mrs. Trump's Rule 12(b)(6) merits motion.

If the *Amount in Controversy* cannot be ascertained or has not been properly established, then there can be no subject-matter jurisdiction, and the case must be remanded to New York State Court.

If there is no *Justiciable Case or Controversy,* then there can be no subject-matter jurisdiction, and the case must be remanded to New York state court. Defendant's counsel should

9

be careful what they wish for. Mrs. Trump's challenge to a justiciable controversy in her motion is self-defeating.

For a federal court to have subject matter jurisdiction, there must be *both* diversity and a justiciable controversy. The Complaint alleged a justiciable controversy under New York C.P.L.R. § 3001 – a different declaratory action statute with its own standard, one more generous than federal § 2201. If the Court finds that no declaratory action is available under § 2201, and a justiciable controversy is therefore lacking, then the case must be remanded. Mrs. Trump's counsel argue that the federal statute doesn't permit the declaratory relief sought by Mr. Wolff, but it is likely that C.P.L.R. § 3001 does. It is not likely that this Court should even rule on New York C.P.L.R. § 3001. It is a New York procedural law, not substantive. That is yet another reason why remand is appropriate. Even if the Court were to rule that no justiciable controversy exists under § 3001, then diversity jurisdiction would be lost, and the ruling would be a nullity.

### A. The Court Lacks Diversity Jurisdiction as the Amount in Controversy Has Not Been Established or Pled and Speech Rights Cannot Establish Any Amount in Controversy.

Diversity Jurisdiction requires that the removing party establish the $75,000 "amount in controversy." Nowhere has it been shown, plead or established that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).

To the extent that Wolff's action is one for a *declaratory judgment,* the value of the judgment is the value of the object of the litigation.[10] When the object of the declaratory action is "intangible or [involves] damages incapable of reduction to monetary terms such as free speech, … and loss of personal liberty," the Second Circuit regards them as "too speculative" to support subject-matter jurisdiction.[11]

---

[10] *Hunt v. Washington State Apple Adv. Com'n.*, 432 US 333, 347 (1977).
[11] *Moore v. Betit*, 511 F. 2d 1004, 1006 (2d Cir. 1975); *Kheel v. Port of NY Authority*, 457 F.2d 46, 49 (2d Cir 1972).

Wolff's Complaint for declaratory relief is specifically addressed to the vindication of his free speech rights, and it seeks to protect his *future* ability to continue to report on the Trumps and the Epstein issues – a subject that he has committed himself to investigating and reporting on regularly via thrice weekly podcasts on *The Daily Beast* and other publishing outlets.

Mrs. Trump relies on the canard that Wolff's action is only for "past" harm - as if that is a basis for dismissal of a declaratory action. But Trump's counsel ignores one of the core express objectives of Wolff's action, and appear not to have read the Complaint. The Complaint states:

> "Wolff is entitled to a Declaratory Judgment on all claims related to or referenced in the Threat Letter … because … e) ***significantly, the claims impede and chill future reporting and writing*** that Mr. Wolff has committed to doing regarding Epstein, Mr. Trump and Mrs. Trump. In many respects that is the primary purpose of these claims." Compl., ¶ 9 (emphasis added).

The other key feature of the Wolff Complaint is that it is *premised on the anti-SLAPP law*. Anti-SLAPP laws are expressly aimed at interdicting efforts like Mrs. Trump's to chill, intimidate, and silence speech – not just past speech, but, significantly, *future* speech, i.e., simply put, to shut critics up and, in this case, to get Wolff to stop investigating and writing about Mrs. Trump, Jeffrey Epstein, and the broad *subjects* of the eleven statements Mrs. Trump alleged to be libelous in her 770 letter.[12] Many of the claims in Brito's § 770.01 Notice against the eleven statements are broad, shotgun implication claims. A device used by libel claimants, as here, to expand the intimidating force and range of their SLAPP claims. Not just to attack past specific statements, but to reach broader *subjects of a journalist's ongoing reporting*. Wolff Compl., ¶ 9.

Brito's § 770 Threat Letter was the statutory initiation of a SLAPP claim. The New York anti-SLAPP law was designed and intended to interdict such future speech suppressing "claims."

---

[12] It is notable too that some of the Statements at issue in the Letter and Complaint are not about Mrs. Trump, but about Mr. Trump. So, her action is a SLAPP also maneuver by President Trump himself to ward off further inquiries into the Epstein matter.

The remedy sought in the Complaint is to protect Wolff's future reporting against this type of

SLAPP intimidation. Wolff's action is therefore one to protect his free speech rights and that

makes the potential monetary claims too "speculative" for any "amount in controversy"

valuation. The case must be remanded on that ground alone. *See Moore*, 511 F. 2d at 1006;

*Kheel*, 457 F.2d at 49.

     **B.** **Wolff States Proper Causes of Action for Declaratory Judgment on** *Asserted* **Claim of Libel, and on the** *Continuation* **of Asserted Libel Under N.Y. Anti- SLAPP; and an Affirmative Anti-SLAPP Against Trump's §770 Claims of Libel.**

Trump moves to dismiss for failure of the Declaratory Judgment actions to state a claim.

She argues 1) that Wolff's Complaint seeks merely an "advisory opinion" concerning "*future*

contingencies"; 2) that the action only involves "*past*" actions, not future or ongoing disputes

that deserve to be resolved or clarified, and 3) that the two Anti-SLAPP causes of action are only

claims addressed to a "mere communication" into New York and that "mere communication"

could not possibly give rise to any kind of claim – affirmative or declaratory. They say, quite

disingenuously, that their "defamation claim has not been asserted." ECR 9, at 13. It has been

asserted. Mrs. Trump's counsel mischaracterizes the nature of the claims they have made. They

seem not to recognize what the anti-SLAPP law is about, what it is designed to remedy, or what

a "claim" is under N.Y. Civil Rights Law § 76-a.[13]

---

[13] Under the N.Y. Civil Rights Law § 76-a 1(a), "An action involving public petition and participation is a claim based upon: (1) any communication in a place open to the public or in a public forum in connection with an issue of public interest." A "claim" may "include any lawsuit … or other judicial pleading or filing requesting relief." It is not limited to them and does not use the term "shall," as is used in other portions of the statute. As such, "[a]n action involving public participation is a claim" … "based on a public communication in connection with a matter of public interest." Brito's § 770.01 was a statutorily required notice to be "served" on "the defendant" seeking relief and legal consequences under § 770.02. It is the commencement of a legal process, and it carries legal consequences for the recipient libel "defendant." All that Wolff needs to show to trigger § 70-a protections is that he was made the subject of a claim directed at his speech in a public forum regarding a matter of public interest. The anti-SLAPP is activated by that minimal and deliberately open language. Just as § 770 notices have legal consequence under Florida law, § 770 notices have legal consequences under New York law. Brito does not get to walk it back as a "mere communication."

First, Wolff does not seek advisory opinions on past actions; as stated earlier, he plead that he continues to report on the *very active story* of the Trump association with Jeffrey Epstein, like *many* outlets continuing to report on this story. Compl., ¶ 9; Korzenik Decl.

Second, Brito's § 770.01 letter was not a "mere communication," nor was it an "unasserted claim for defamation." The Brito 770.01 Letter was not by any stretch a typical threat letter. It was not a mere chastening shot across an adverse party's bow. Mrs. Trump's Counsel now tries to gamely propose that there is no actionable controversy. But Mr. Brito served his Letter pursuant to and citing to Florida Statute XLV Sec. 770.01. The statute required that the libel "*plaintiff* shall...serve notice in writing *on the defendant, specifying* the article or broadcast and *the statements therein* which he or she alleges to be false and defamatory." § 770.01. In case there is any question, Mr. Wolff was therefore a "defendant" according to the language of the § 770.01 statute.

A § 770.01 letter is the assertion of a claim that carries loss of rights for a libel defendant. It is more than a legal letter to a writer advising him that he has made a defamatory statement. It is 1) a statutorily mandated legal notice, 2) a legal initial step to suit, which may not go further without it,[14] 3) in a form and substance specified by the statute that must be "served" on the party to be held liable, 4) one which must state specifically the statements challenged, as in a complaint,[15] and 5) one that carries with it legal consequences for the recipient "defendant" who must assess and respond to it within the time period prescribed by the statute. That is the commencement of legal process for a defamation claim. "Plaintiff" Trump served a formal notice on "the defendant," writer Michael Wolff. Fla. Stat. § 770.01.

---

[14] Florida libel cases are dismissed when no § 770.1 Letter precedes suit or if the notice is not in the form and content required by the statute.
[15] If a § 770 letter does not include a statement that is later pled in a complaint, then it must be struck from the complaint.

Most libel threat letters lack the specificity of a § 770 Letter. Typically, they charge the recipient with publishing unspecified falsehoods, complaining that everything is false, or the letter suggests that the threat covers more than just those things referenced in the letter, as is the practice of lawyers hedging their bets. Such letters are not compliant with § 770.1. You have to specify the statements at issue. If you do not spell it out, the claim will be struck. So, a § 770 letter must therefore meet the specificity requirements of a formal Complaint. Whatever is not pled in the § 770 letter cannot be pled in the Complaint.

Mrs. Trump's letter had an additional feature to it of note—*it largely relied on New York case law.* So, she knew not only that the letter was going to a New Yorker, but also that it would engage New York libel law. Brito's 770 Letter is annexed to the Notice of Removal (ECF 1) as Ex. A to the Wolff Complaint which is attached to ECF 1 as Ex. 1.[16]

All that Wolff needs to show to activate § 70-a protections is that a "claim" has been directed at his speech on a matter of public concern in a public forum. N.Y. Civ. Rights Law, § 70-a. When that easy threshold pleading has been met, it is Mrs. Trump who must, to defend herself against the anti-SLAPP cause of action, show that her claims have a "substantial basis in fact and law." § 70-a(1)(a). Wolff's anti-SLAPP causes of action are, therefore, not based on "future contingencies." A claim was directed by Brito's 770 letter based on Wolff's speech in a public forum. That triggers the cause of action and remedies under the New York anti-SLAPP. *In short, § 770 claims trigger § 70-a protections.*

For the above reasons, none of Defendant's 12(b)(6) challenges succeed. Not against the two declaratory actions and not against the one affirmative anti-SLAPP cause of action. In all

---

[16] Note too that Wolff does not claim that the § 770 Letter was "libelous." Hence, his action is not one barred under the case law or statute that Defendant relies on.

events, the Court lacks the subject matter authority to rule on or consider any merits motion. *See Platinum-Montaur,* 943 F.3d at 617.

## IV.    The Motion for § 1404(a) Transfer Has Not Even Been Properly Made, and In All Events, Must Be Denied.

Mrs. Trump's motion a half-hearted stab at a § 1404(a) motion for transfer to federal district court in Florida. It lists the eight usual factors (ECF 10, at 15) and then does little more than pass its hand cursorily and airily over them. ECF 9, at 16-17.

It is worth looking at a few of the principles that surround § 1404(a) motions to transfer to see why this one is especially flawed. First, the party seeking transfer bears a heavy burden. She must make a "*clear and convincing showing*" that transfer requirements are met.[17] If the inconveniences or hardships are equal as to the parties, then the motion should be denied. *Id.* Second, the plaintiff's choice of forum is "normally entitled to great weight" particularly when the plaintiff's chosen forum is its home base.[18] And there is another feature to convenience in this case: Mrs. Trump has her living quarters and full support staff here in New York at Trump Tower. Korzenik Decl. Mr. Wolf has no base of any kind in Florida and there would be no personal jurisdiction over him in Florida. Given the extent of Mrs. Trump's current activities in New York, it would seem *less* than convenient for her to litigate in Florida, even if it might be more convenient for her counsel, Mr. Brito. As to factor #7 (the relative means of the parties), it is more than obvious that Mrs. Trump has far more in the way of means and resources than does journalist Wolff.

Third, the convenience of fact witnesses is seen as the most significant of the factors. To meet it, the movant must *specify* the key witnesses to be called and offer a general statement of

---

[17] *Johnson v Bryson*, 851 FSupp 2d 688 (S.D.N.Y. 2002); *JFP Touring v. Polk Theatre*, 2007 WL 797478 (S.D.N.Y. 2007, McMahon, J)
[18] *Aerotel v. Sprint Corp.*, 100 FSupp 2d 189, 197 (S.D.N.Y. 2000).

what their testimony will involve. Mrs. Trump's counsel has done *none* of that. Though that is not required of Wolff, we have identified the New York based activities of Mrs. Trump, Mr. Trump, Jeffrey Epstein and Ghislaine Maxwell *in the 1990's and early 2000's*, the New York modeling agencies, the New York places that they frequented together and the people in their circle, all in New York. See Korzenik Decl. The center of gravity of the events, the locus of operative facts, that are the subject of the eleven statements at issue in the Complaint are largely and substantially in New York. We identify some of the people and agencies that would have relevant information. Mrs. Trump has identified *no one*.

Fourth, the law at issue would be New York law - not Florida law.[19] Mr. Brito's October 15 letter even cites heavily to New York law and New York cases. *See* Ex. A to Complaint, attached to the Not. of Removal (ECF 1) as Ex. 1. Mrs. Trump's counsel thus recognizes the significant New York state dimensions of his claims – they reach editorial process and publishers in New York (with, among others, a New York-based publication, *The Daily Beast, which he references in the letter*). New York state has a particularly strong and pronounced governmental interest in publishing and editorial activities in the state. That interest is frequently and expressly declared in New York case law. Thus, Mr. Brito knew what jurisdiction and legal setting he was stepping into when he served his 770 Letter.

While Florida's 770.01 is a statutory procedural device for initiating a case from Florida, it does not follow that New York law would not apply to the substantive defamation issues in the case. Choice of law analysis would overwhelmingly dictate that New York law governs the *substantive* libel claims, whatever *procedural* law might apply.

---

[19] Counsel's "forum shopping" canard is empty. New York law would apply on most if not all issues, as Mr. Brito seems to recognize from his Letter citing mostly New York libel law. First to file is first to file. But a New York court is better suited to apply New York law and a New York state court is better suited to apply the State's relatively new anti-SLAPP law.

Finally, the subject-matter jurisdiction issue precedes all others. A ruling on transfer, as with all other issues, merits and otherwise, raised in Mrs. Trump's Motion to Dismiss, would be a nullity if the Court lacks subject-matter authority over the case. The Motion to Transfer is not even properly framed or supported. It deserves no consideration. It must fail even if considered.

## CONCLUSION

For the above reasons, Defendant respectfully requests this Court deny Plaintiff's motion to dismiss in full, grant Defendant's motion to remand, grant the relief enumerated in the Notice of Cross-Motion and grant such other and further relief as the Court deems just and proper.


Dated: February 9, 2026                     Respectfully submitted,


                                   By: /s/ David S. Korzenik


                                   David S. Korzenik
                                   Eric Rayman
                                   MILLER KORZENIK RAYMAN LLP
                                   The Paramount Building
                                   1501 Broadway, Suite 2015
                                   New York, NY 10036
                                   212-752-9200
                                   dkorzenik@mkslex.com

                                   *Attorneys for Defendant Michael Wolff*