**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MICHAEL WOLFF,<br><br>               Plaintiff,<br><br>     v.<br><br><br>MELANIA TRUMP,<br><br>              Defendant. | Case No. 1:25-cv-10752-MKV-SC |

### PLAINTIFF MICHAEL WOLFF'S MEMORANDUM OF LAW IN REPLY TO DEFENDANT TRUMP'S OPPOSITION TO HIS CROSS-MOTION FOR REMAND AND FURTHER RELIEF

MILLER KORZENIK RAYMAN LLP
David S. Korzenik
Eric Rayman
The Paramount Building
1501 Broadway, Suite 2015
New York, New York 10036
dkorzenik@mkslex.com
*Attorneys for Michael Wolff*

**TABLE OF CONTENTS**

ARGUMENT .......................................................................................................................... 1

    I.      Defendant Trump Failure to Offer Any Facts or Declaration by Her or Her Counsel Contesting Plaintiff Wolff's Detailed Presentation of Facts to Justify Removal Mandates Remand........................................................................................................ 1

    II.     Remand Is Independently Warranted Because the $75,000 Amount in Controversy Requirement Has Not Been Met. ................................................................................... 2

    III.   Discovery on Trump's New York Citizenship is Warranted Even If Trump Has Not Entirely Failed to Meet Her Substantial Burden of Proving Florida Citizenship ........... 4

    IV.   Discovery on 301 General Jurisdiction Contacts is Warranted if Such Contacts Have Not Already Been Shown by Wolff. ................................................................................ 4

    V.     Discovery on 302(a)(3) Specific Jurisdiction Contacts is Warranted If Such Contacts Have Not Already Been Established. ............................................................................... 5

    VI.   The Court Cannot Rule on Trump's 12(b)(6) Merits Motion without First Establishing Subject Matter Jurisdiction; and if it Were to Rule that Wolff's Claims Fail under the Declaratory Judgment Act 2201, then There Can Be No Art. III "Case and Controversy," and the Case Must Be Remanded to State Court. ................................... 6

CONCLUSION..................................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**

*AmTrust North America, Inc. et al. v. Preferred Contractors Ins. Co. Risk Retention Grp., L.L.C.,*
No. 1:16-MC-0340, 2016 WL 6208288 (S.D.N.Y. Oct. 18, 2016) ................................................ 5

*Cap Dist. Enters. LLC v Windsor Dev. of Albany,*
861 NYS2d 816 (2008) ............................................................................................................... 9

*Dow Jones & Co v. Harrods, Ltd.,*
237 F. Supp. 2d 394 (S.D.N.Y. 2002) ........................................................................................ 8

*First Nat. Bank v Louisiana H'wy Comm,*
264 U.S. 308 (1924) .................................................................................................................... 4

*Hussein v. State,*
81 A.D.3d 132 (2011) .................................................................................................................. 9

*Immuno AG. v. Moor-Jankowski,*
77 N.Y.2d 235 (Ct. App. 1991) .................................................................................................. 9

*McGowan v. Cadbury Schweppes.,*
941 F.Supp 344 (S.D.N.Y. 1996) ............................................................................................... 3

*MedImmune, Inc. v Genetech,*
549 U.S. 118 (2007) ................................................................................................................. 7, 8

*Platinum-Montaur Life Sci. v Navidea Pharma.,*
943 F.3d 613 (2d Cir. 2019) ....................................................................................................... 5

*Stoncor Grp. v Peerless Ins.*
322 F.Supp 3d 505 (S.D.N.Y., 2018) ......................................................................................... 8

*ThermoLife Int'l LLC v. Vital Pharm. Inc.,*
 2019 WL 4954622 (S.D. Fla. Oct. 8, 2019) ........................................................................... 8, 9

*Time v. Hill,*
385 U.S. 374 (1967) .................................................................................................................. 10

*Tongkook America, Inc. v Shipton Sportswear* Co.,
14 F.3d 781 (2d Cir. 1994) ......................................................................................................... 4

*Virginia v. American Booksellers,*
484 U.S. 383 (1988) .................................................................................................................. 10

**Statutes**

28 U.S.C. §2201 ....................................................................................................................... 7, 9

Fla. Stat. § 770.01 ................................................................................................... 3, 6, 9

N.Y. C.P.L.R. § 301................................................................................................... 5

N.Y. C.P.L.R.§ 302................................................................................................... 6, 7

N.Y. CPLR §3001.................................................................................................... 7, 9

## ARGUMENT

**I.      Trump's Failure to Offer Any Facts or Declaration by Her or Her Counsel to Justify Removal or To Contest Wolff's Detailed Presentation of Facts Mandates Remand.**

The analysis of citizenship turns *not on formalities,* but on the *realities* of a person's life: it looks to "the center of [Trump's] domestic, social and civil life" (ECF 14 p. 3); and, on her "intent" – her intent to return even if she presently lives elsewhere. Id. The burden of proof falls heavily upon the party seeking removal.[1] The removal statute is to be construed "strictly" and "narrowly, resolving all doubts against removability." Id.

Wealthy people may have many "residences," but they can have only one citizenship. Id. To rely, as Trump has, on nothing more than a claim of possession of a driver's license and a voter registration and other merely conclusory pronouncements – coyly referenced in a memo of law - demonstrates nothing more than "residence." Beyond that, Trump has shown nothing. Trump's citizenship and personal jurisdiction claims are ill-served by these meager offerings:

➢ There is no declaration from Trump. No declaration from her attorneys. No assertions of fact anywhere beyond the conclusory claim to Florida citizenship and an unseen driver's license that allowed Trump to vote in Florida.

➢ More remarkable is that Trump has offered no declaration or affidavit even to challenge any of the facts in our lengthy declaration that outlines Trump's true, sustained and substantial activities in NYC. Not a single fact set out in our Declaration (ECF 15) has been contested by *any* submission from Defendant Trump in this motion sequence.

---

[1] When one professes a "change" in citizenship, this burden is heightened, calling for "clear and convincing" evidence. An unseen license and voter registration is not convincing or clear. It is certainly not in the face of abundant, clear and convincing evidence that her life is centered in Trump Tower, and revolves around her family and business in New York, as has been  extensively reported in the press.

➢ This factual silence is nothing less than a default, a proof failure. There is no factual record to justify removal; no factual record to support lack of 301 or 302 jurisdiction.

➢ This is not merely a proof failure. It is a deliberate choice to avoid having Trump make any sworn commitments or to have any sworn commitments made for her by her counsel.[2] It is a withholding of information that warrants an adverse inference.

➢ If there are any "doubts," remand is required. If there is a firm factual contest, then discovery is warranted.

What is all the more remarkable and presumptuous is that the First Lady does not even see the need to meet any burden of proof or make any required factual showing. But she should be treated no differently on this than any other litigant.

Removal is not justified by this record. Remand is warranted.

## II.     Remand Is Independently Warranted Because the $75,000 Amount in Controversy Requirement Has Not Been Met.

Trump's counsel fail to understand what the Amount in Controversy (AIC) is about and how it is assessed. The failures are manifold. First, the AIC is based not on the value of Trump's claims (the breathless and publicity-seeking $1B), but on the value of Wolff's claims. Wolff's claims are for impairment of his past and ongoing speech rights and interests. And the proper 2d Circuit analysis calls for AIC evaluation to be done from *Plaintiff Wolff's* "*point of view.*"[3] Second, the speech rights that Wolff seeks to vindicate are intangible and declaratory, but not readily assayed as monetary awards might be. As noted, the Second Circuit recognizes that when

---

[2] The one Declaration from counsel Ms. Schechtman relates only to service of process - showing affidavits of **our service** and a letter from Mr. Brito insisting that he has no authority to accept service. No factual submissions by Defendant even addresses citizenship.

[3] The courts look to the relief sought *from the plaintiff's (Wolff's) point of view* – not from the defendants' (Trump's) point of view. There are strong policy considerations which support *the plaintiff's viewpoint rule.* Congress's intent to restrict federal court jurisdiction would be diluted if courts measured the costs of relief from the defendant's viewpoint in a removal action, and such a rule would only broaden rather than restrict federal court jurisdiction. *McGowan v. Cadbury Schweppes.*, 941 F.Supp 344, 346 (S.D.N.Y. 1996).

2

*intangible rights* are at issue, i.e., child custody, freedom of speech, and loss of personal liberties,

they are less capable of reduction to any AIC and they are seen as "speculative." (ECF 14 p.12)

Third, Trump is stuck on the view that Wolff is making some kind of "defamation" claim

against her, seeking some kind of *reputational* recovery – such that it might be reduced to some

monetary amount or be subject to the 302 "defamation" exception. She has it wrong. She appears

to think that it might be hwe path to getting her Fla. § 770.01 Notices to Wolff and his publisher

*The Daily Beast* into the 302(a)(ii) defamation exception. The interests to be vindicated through

anti-SLAPP laws are completely different than the reputational interests asserted by Trump's

libel grievances. Wolff's Complaint does *not* plead that Brito's 770 Notice was defamatory.

Further, the Complaint is instructive as to the amount it seeks. It reads, "… in an amount

as yet to be determined, but in all events exceeding the jurisdictional amount for this Court."

Complaint  at ¶¶26, 28. "This Court" refers to New York Supreme, New York County. The

jurisdictional limit in New York Supreme Court, New York County is $25,000, *not* $75,000.

That is what was pleaded. The requisite AIC of $75,000 appears nowhere on the face of the

Complaint, which is where it must be found.[4] Finally, Trump's argument for the AIC is that

Trump/ Brito did not just "pluck that number from out of the air." But it seems to be exactly

what Brito does when he  "plucks out" of the air $1B for every one of his 770 letters he sends to

people he hopes to menace. It is the party invoking federal jurisdiction that has the "burden of

proof" on the AIC; and they must do so with a "reasonable probability."[5] That Trump claims not

to have "plucked [the $1B] out of thin air" is no way to meet or even address that burden of

proof. But, again, it is from the wrong POV. Trump is relying on cases which were initiated in

---

[4] *First Nat. Bank v Louisiana H'wy Comm*, 264 U.S. 308 (1924). The $75K amount must appear on the face of the complaint or be established by proof that the matter in controversy exceeds the jurisdictional amount. No such amount appears on the face of the Complaint; no such proof was furnished by Trump.
[5] *Tongkook America, Inc. v Shipton Sportswear* Co., 14 F.3d 781, 784 (2d Cir. 1994).

3

federal court – not removed to federal court. In removed cases, the burden of proof is on the removing party. Trump can point to nothing in the record that supports an AIC valuation that beats $75K.

### III.    Discovery on Trump's New York Citizenship is Warranted Even If Trump Has Not Entirely Failed to Meet Her Substantial Burden of Proving Florida Citizenship

Wolff's Cross-Motion at ¶2 (ECF 13, p. 1.) requests that if the Court does not remand the case on the grounds that Trump has failed to meet her burden of proof on citizenship (see Sec. I above), then, in the alternative, the Court should allow Wolff time to conduct fair discovery of her citizenship and of her course of conduct in NY, Florida and D.C. Wolff has certainly supplied sufficient allegations of Trump's New York citizenship to justify discovery – especially in the absence of a record that provides evidence to the contrary. *Platinum-Montaur Life Sci. v Navidea Pharma.*, 943 F.3d 613, 619 (2d Cir. 2019).

### IV.    Discovery on 301 General Jurisdiction Contacts is Warranted if Such Contacts Have Not Already Been Shown by Wolff.

Wolff's Cross-Motion at ¶6 (ECF 13, p. 2.) requests that if the Court permits Trump to contest personal jurisdiction in spite of the absence of evidence she has provided (beyond conclusory denials), then the Court should provide Wolff time and opportunity to conduct discovery on those bases of personal jurisdiction. However, Trump has come forward with nothing to put that issue in play. She simply argues that "domicile" for purposes of general N.Y. C.P.L.R. § 301 personal jurisdiction under *Daimler* is identical to "citizenship" for purposes of diversity. That is not what *Daimler* says. One can be subject to general personal jurisdiction in any state in which one is "at home." *Daimler* says that one can be "at home" not just in the state of one's domicile, but also in exceptional cases in a state with which one has "continuous and

4

systematic" contacts.[6] Wolff opposition has identified Trump's extensive, continuing and systematic contacts with Trump Tower and New York City. ECF 15. Nowhere has Trump presented any facts that contest anything asserted in that Declaration. Instead, she can only say that she also has a residence elsewhere. Wolff has presented substantial evidence of Trump's substantial activities, personal, social, civil and business in New York City. If the Court finds otherwise, then fair discovery of Trump on general 301 jurisdiction is warranted.

## V.   Discovery on 302(a)(3) Specific Jurisdiction Contacts is Warranted If Such Contacts Have Not Already Been Established.

If specific personal jurisdiction over Trump has not been established, Wolff has made a sufficient showing of 302(a)(3) New York contacts to warrant a fair opportunity for discovery on that issue. *See* Cross-Motion, ¶6 and ¶7 (ECF 13). Wolff has shown that the 770.01 Notice– a notice that had legal consequences for Wolff in New York – establishes 302(a)(3) jurisdiction over Trump in New York. That in-state harm was compounded by the 770.01 Notice to Wolff's publisher *The Daily Beast* ("*TDB*") in NY – that notice resulted in *TDB* taking down Wolff's challenged statements. The 770.01 Notice to Wolff states that *TDB* did just that.[7] See Ex. A to Complaint. That prior action furnishes the foundation for Specific Jurisdiction over a putative non-domiciliary and surely warrants discovery into Defendant Trump's NY contacts.

Wolff is in New York and has been in New York at all times relevant. He conducts his research and writing largely in New York and does a podcast three times a week from TDB's studio in NYC. The Wolff Complaint so alleges at ¶1. And that allegation must be accepted as

---

[6] *AmTrust North America, Inc. et al. v. Preferred Contractors Ins. Co. Risk Retention Group, L.L.C.,* No. 1:16-MC-0340, 2016 WL 6208288, at *3 (S.D.N.Y. Oct. 18, 2016).

[7] Brito's 770 Notice to Wolff stated: "As you likely are aware, in July and August 2025, *The Daily Beast* and podcast platform Spotify removed stories and episodes related to your false and defamatory claims." See Exhibit A to the Wolff Complaint. That is direct, knowing and purposeful NY impact by Trump. That is nothing short of causing anti-SLAPP harm to Wolff in NY. N.Y. C.P.L.R.§ 302(a)(3).

5

true. TDB is in NY and has its place of business here and the 770.01 Notice from Brito to TDB was addressed to them here. TDB took action in response to the 770.01 Notice and did so from their offices in NYC. And the 770 Notices to both TDB and Wolff recite New York law. Trump also negotiated the terms of the retraction with TDB counsel in NY.

Hence, Trump through her lawyer committed an anti-SLAPP tort outside New York that caused anti-SLAPP injuries in New York to Wolff – first, through the intimidating speech suppression caused by the 770 and second, through the take-down that resulted from the 770 Notice to TDB. Both 770 Notices and the resulting take-down are purposeful availment directed at New York. In even in the face of these facts, the court holds that C.P.L.R. 302(a)(3) jurisdiction has not been established, then Wolff is entitled to discovery on personal jurisdiction.

**VI.    The Court Cannot Rule on Trump's 12(b)(6) Merits Motion without First Establishing Subject Matter Jurisdiction; and if it Were to Rule that Wolff's Claims Fail under the Declaratory Judgment Act 2201, then There Can Be No Art. III "Case and Controversy," and the Case Must Be Remanded to State Court.**

Wolff's Cross-Motion at ¶5 and ¶7 (ECF 13 page 2) seeks two types of related relief:

➢ ¶5 asks the Court to give "Priority to the question of Subject-Matter jurisdiction issue over the 12(b) motions – which includes the 12(b)6 merits motion directed at the Declaratory causes of action.

➢ ¶7 asks the Court to strike the 12(b) and transfer motions as the Court lacks authority over those motions unless and until subject-matter jurisdiction is established.

Trump's 12(b)(6) motion contends that Wolff's declaratory causes of action are mere efforts to secure "*advisory opinions.*" But she should be careful what she wishes for. Her "advisory opinion" attack is self-defeating—it destroys subject-matter jurisdiction. The Supreme Court in *MedImmune, Inc. v Genetech*, 549 U.S. 118 (2007) reiterated that a court cannot entertain a Declaratory Judgment Act [28 U.S.C. §2201] claim if it merely seeks "an advisory opinion," i.e., "an opinion advising what the law would be upon a hypothetical state of facts."

6

*Id.*, at 127. Such an advisory opinion is not "justiciable under Article III." *Id.* That ousts the Court of Article III authority. If there is "no case or controversy," then the Court *must remand*.

The New York court can then determine whether Wolff's declaratory actions are suitable under N.Y. CPLR §3001. Wolff's case was initiated in state court under C.P.L.R. §3001 (*not* under 28 USC §2201.) This Court cannot rule on how C.P.L.R. §3001 would apply: First, for *Erie/Klaxon* reasons; and second, because Wolff did not bring his declaratory actions under §2201; he brought them under C.P.L.R. §3001. C.P.L.R. §3001 and the federal DJA §2201 are different statutes set in different procedural frames[8]. Their parameters of discretion and abuse of discretion are different. Whether a claim seeks an "advisory opinion" is a multifactor analysis in which the factors are weighed and assessed differently in a federal court §2201 setting versus in a state court §3001 setting. For example, if *state law* is at issue, the federal court will decline whereas the state court will embrace the claim and not regard it as seeking an advisory opinion.

Under *MedImmune*, the question of whether an action seeks an "advisory opinion" is tied directly to whether the Federal Court has subject-matter jurisdiction over the case. Federal diversity subject-matter jurisdiction, as noted earlier, is to be construed *strictly and narrowly,* whereas a New York state court's embrace of a declaratory action under C.P.L.R. §3001 is *not* so constricted. It can wield its discretion differently and with less constraint.

There are several problems with the 12(b)(6) cases that Defendant Trump relies on: [9]

➢ First, none of them are removal cases. None involve remand issues. They all started and ended in federal court.

---

[8] Where a case involves "matters of state law" or "would improperly encroach on the domain of a state or foreign court" a federal court will apply its 2201 discretion to *decline* the case in deference to the state law. *Stoncor Grp. v Peerless Ins.* 322 F.Supp 3d 505, 517 (S.D.N.Y., 2018) (citing others). The anti-SLAPP law is unique to NY state law. A NY State court would apply its 3001 discretion to *embrace* an anti-SLAPP declaratory action.

[9] *See, e.g., Dow Jones & Co v. Harrods, Ltd.,* 237 F. Supp. 2d 394, 426 (S.D.N.Y. 2002), aff'd, 346 F.3d 357 (2d Cir. 2003); *ThermoLife Int'l LLC v. Vital Pharm. Inc.,* 2019 WL 4954622, at *5 (S.D. Fla. Oct. 8, 2019) and other cases cited at page 6 of ECF 18.

7

➢ Second, *MedImmune* allows that where *not all* of the statutory elements of a declaratory action are currently satisfied but might well be *imminent*, a DJA §2201 claim can be permitted. *MedImmune,* 549 U.S. at 128. Where the "factual and legal dimensions of the dispute are well defined … nothing about the dispute would render it unfit for judicial resolution" despite the "final step" being absent.[10] Here it is imminent that Wolff would be made a "defendant" if he were not already one under the Fla. §770 rubric and procedure. That is the imminent "final step."[11] The Fla. §770 Notice defined the dispute and controversy with sufficient clarity. The impact on Wolff of that controversy extends to his continuing coverage of the Trump/Epstein relationship. The Trumps want that reporting chilled and stopped. The Fla. §770 Notice attacks, for example, the claim that the Trumps were in "*Epstein's social circle.*" That zone of inquiry is exactly what Wolff has been and continues to be investigating and reporting on.[12] It is not just a *one-off* press release or article as in *ThermoLife* and others. It is Wolff's active and ongoing reporting. He is entitled to clarity on the controversy that directly threatens his job and his ongoing journalism.

➢ New York state law similarly will not treat declaratory judgement claims as simply seeking "advisory opinions" even if they turn on future events that have not yet

---

[10] If permitted in circumstances described in *MedImmune*, then there is no reason that it should not be permitted in the anti-SLAPP statute context where the statutory purpose is expressly directed against efforts to chill and suppress speech on matters of public concern. That is especially so with NY's anti-SLAPP where its purpose and application is driven by the more protective policies of New York State and its own Constitutional protections of free speech which are expressly deemed broader than those of the First Amendment. *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 249 (Ct. App. 1991).

[11] Here is another significant difference between §3001 and §2201: New York's §3001 will show even greater receptivity to Dec actions brought **before** "any breach or violation has occurred." *Hussein*, 914 NYS2d at 467. *See also Cap Dist. Enters. LLC v Windsor Dev. of Albany*, 861 NYS2d 816, 817 (2008). Thus, declaratory judgment is not precluded just because it involves a "future event."

[12] *See e.g.* Inside Trump's Head podcast, "Why Trump Knows There's No Escaping Epstein," The Daily Beast (Jan. 17, 2026) https://www.youtube.com/shorts/tfj9ch7rCu0 (Wolff reporting on the weekly podcast he co-hosts on The Daily Beast that continued to report on the Epstein files and Trump ties as it is released by the Dept. of Justice).

8

occurred. *See Hussein v. State*, 81 A.D.3d 132, 135 (2011), *aff'd*, 19 N.Y.3d 899 (2012) ("The fact that the court may be required to determine the rights of the parties upon the happening of a future event does not mean that the declaratory judgment will be merely advisory.").

Whether or not Wolff is yet made a "defendant" via Fla. § 770 or via a filed complaint will not make his declaratory claims merely advisory. State and federal courts will not compel him to continue his reporting in the face of imminent peril. But if this Court regards his claims as advisory, then it must remand.

## CONCLUSION

We are now in a time of rampant SLAPP claiming, not just Trump's, but in business and entertainment, etc. Across the board, libel claims are aggressively made to silence critics and to gain the publicity from the onset of the claim. The claimants know they will likely fail. But dismissal will come years later with little fanfare. And the speaker will have been punished and chastened by the experience. Hence, the growing prevalence of libel claiming – the wrong that the statute was intended to interdict.

Against this speech chilling trend stands not just the anti-SLAPP law, but the often articulated purpose behind it:  As was said in *Time v. Hill*, 385 U.S. 374, 389 (1967), "[f]ear of large verdicts in damage suits for innocent or merely negligent misstatement, even fear of the expense involved in their defense, must inevitably cause publishers to steer … wider of the unlawful zone." And quite *apropos* of Wolff's case. *See Virginia v. American Booksellers*, 484 U.S. 383, 393 (1988) (Allowing *pre-enforcement challenge* to statute restricting display of sexually explicit material because plaintiffs "have alleged an actual and well-founded *fear that*

*the statute will be enforced against them*," which threatens the danger of "self-censorship; *a harm that can be realized even without an actual prosecution*.") (emphasis added).

The New York legislature has uniformly rejected past pusillanimous judicial readings of the anti-SLAPP's language. The 2020 revision is a catalog - case by case - of repudiations of narrow, squinty-eyed, judicial readings of the statute. Whatever is to be said of New York's anti-SLAPP law, it is not to be read narrowly. Every word in it demands broad and generous reading, in line with its N.Y. State Constitutional imperative (Art. I §8) to protect freedom of speech (protections broader than those of the 1st Amendment); and to protect speakers against the chilling impact of legal intimidation. This case should be remanded to state court which will apply the state's anti-SLAPP law and C.P.L.R. §3001 as the state deems just and proper.

Feb. 24, 2026
New York, N.Y                                   */s/ David S. Korzenik*

                                                David S. Korzenik
                                                Eric Rayman
                                                The Paramount Building
                                                1501 Broadway, Suite 2015
                                                New York, New York 10036
                                                dkorzenik@mkslex.com
                                                *Attorneys for Michael Wolff*

10