UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                  :
MICHAEL WOLFF,                                                    :
                                                                  :
                              Plaintiff,                           :
                                                                  :
          -against-                                               :        Case No. 1:25-cv-10752-MKV
                                                                  :
MELANIA TRUMP,                                                    :
                                                                  :
                              Defendant.                           :
                                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM IN SUPPORT OF MOTION BY FIRST LADY OF THE UNITED STATES MELANIA TRUMP FOR SANCTIONS AGAINST MICHAEL WOLFF

                                             DLA PIPER LLP (US)

Of Counsel:

Alejandro Brito (*pro hac vice*)              Caryn G. Schechtman
Brito PLLC                                    Steven M. Rosato
2121 Ponce de Leon Blvd.                      1251 Avenue of the Americas
Suite 650                                     New York, New York 10020
Coral Gables, FL 33134                        (212) 335-4500
(305) 520-7633                                caryn.schechtman@us.dlapiper.com
Abrito@Britopllc.com                          steven.rosato@us.dlapiper.com

*Attorneys for First Lady of the United States Melania Trump*

Dated:  July 20, 2026

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ....................................................................................................... 4

FACTUAL BACKGROUND ........................................................................................................... 6

      A.    Before this Case Was Filed, Mrs. Trump's Counsel Demanded
          That Plaintiff Retract His Defamatory Statements. .................................... 6

      B.    Plaintiff Abusively Sued Mrs. Trump in New York State Court and
          Turned It into a Publicity and Fundraising Machine. ................................. 7

      C.    Mrs. Trump Removed the Case to this Court, Moved to Dismiss,
          and Served a Rule 11 Safe Harbor Letter. .................................................. 8

      D.    Plaintiff Ignored the Safe Harbor Letter and Fought Dismissal by
          Salaciously Speculating About Mrs. Trump's Personal Life. ................... 10

      E.    The Court Dismissed the Case, Condemning Plaintiff's "Bad-Faith
          Forum-Shopping" and "Abuse of the Declaratory Judgment Act." .......... 12

ARGUMENT .................................................................................................................................. 13

   I.    THE COURT SHOULD SANCTION PLAINTIFF AND HIS COUNSEL
      UNDER RULE 11. ..................................................................................................... 13

      A.    Plaintiff and His Counsel Made Unsupported Factual Assertions
          About Mrs. Trump's Family and Private Life. .......................................... 14

      B.    Plaintiff and His Counsel Brought This Lawsuit for Improper
          Purposes. ................................................................................................... 16

      C.    Plaintiff and His Counsel Pressed a Patently Meritless Legal Claim
          to Prop Up Their Forum-Shopping. ........................................................... 18

   II.    THE COURT SHOULD ALSO SANCTION PLAINTIFF'S COUNSEL
      UNDER SECTION 1927. .......................................................................................... 19

   III.    THE COURT RETAINS AUTHORITY TO IMPOSE SANCTIONS. ...................... 20

CONCLUSION .............................................................................................................................. 23

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*(888) Justice, Inc. v. Just Enterprises, Inc.*,
  2007 WL 2398504 (S.D.N.Y. Aug. 22, 2007) ...................................................................4, 26

*Accurate Grading Quality Assurance, Inc. v. KGK Jewelry, LLC*,
  2014 WL 3302303 (S.D.N.Y. July 7, 2014) (S.D.N.Y. July 7, 2014) ...............................4, 26

*Bowler v. United States INS*,
  901 F. Supp. 597 (S.D.N.Y. 1995) ......................................................................................4, 21

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
  498 U.S. 533 (1991) ...........................................................................................................4, 17

*China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc.*,
  2003 WL 21982477 (C.D. Cal. Mar. 12, 2003) ..................................................................5, 20

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) .....................................................................................................5, 22, 26

*De La Fuente v. DCI Telecomms., Inc.*,
  259 F. Supp. 2d 250 (S.D.N.Y. 2003) .................................................................................5, 26

*Ditto v. Ditto*,
  2024 WL 5508217 (S.D.N.Y. May 31, 2024) .....................................................................5, 26

*Fisher Bros. Sales v. United Trading Co. Desarrollo Y Comercio S.A.*,
  No. 85 CIV. 7502, 1987 WL 10391 (S.D.N.Y. Apr. 28, 1987) ..........................................5, 26

*Girl Scouts of the United States v. Steir*,
  2003 U.S. Dist. LEXIS 24582 (S.D.N.Y. Aug. 29, 2003)...................................................5, 26

*Howard v. Klynveld Peat Marwick Goerdeler*,
  977 F. Supp. 654 (S.D.N.Y. 1997) ......................................................................................5, 26

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
  698 F.3d 58 (2d Cir. 2012) ..................................................................................................5, 16

*Kropelnicki v. Siegel*,
  290 F.3d 118 (2d Cir. 2002) ................................................................................................5, 20

*Levine v. F.D.I.C.*,
  2 F.3d 476 (2d Cir. 1993) .............................................................................................5, 18, 26

*McLoughlin v. Altman*,
 1995 WL 640770 (S.D.N.Y. Oct. 31, 1995)........................................................................5, 19

*O'Brien v. Alexander*,
 101 F.3d 1479 (2d Cir. 1996) ............................................................................................5, 17

*Opus Grp., LLC v. Enomatic SrL*,
 2012 WL 13134609 (S.D. Fla. 2012) .................................................................................5, 26

*PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*,
 260 F.3d 453 (5th Cir. 2001) .............................................................................................5, 26

*Perpetual Sec., Inc. v. Tang*,
 290 F.3d 132 (2d Cir. 2002) ..............................................................................................5, 26

*Perry St. Software, Inc. v. Jedi Techs., Inc.*,
 2020 WL 6064158 (S.D.N.Y. Oct. 14, 2020)....................................................................6, 17

*U.S. D.I.D. Corp. v. Windstream Communc'ns., Inc.*,
 775 F.3d 128 (2d Cir. 2014) ..............................................................................................6, 26

*United States v. Int'l Bhd. of Teamsters*,
 948 F.2d 1338 (2d Cir. 1991) ............................................................................................6, 22

*VSA v. Von Weise Gear Co.*,
 769 F. Supp. 1080 (E.D. Mo. 1991) ..................................................................................6, 26

*Wolff v. Trump*,
 2026 WL 1453606 (S.D.N.Y. May 22, 2026) ("MTD Decision")..................................*passim*

**Statutes**

28 U.S.C. § 1927 .........................................................................................................7, 9, 21, 26

28 U.S.C. § 2201 (the Declaratory Judgment Act).................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 11 ...................................................................................................................*passim*

*Help Michael Wolff in His Legal Fight Against Melania Trump*, Nov. 4, 2025 .................7, 11, 19

*I Know Trump's Goons Are Involved in My Melania Lawsuit,* Michael Wolff, Jul.
 3, 2026 ......................................................................................................................................19

*I'm Fighting Melania Trump While Her Husband Is Fighting With His Son*,
 Michael Wolff, May 25, 2026 ...................................................................................................19

*Inside Trump's Head: Episode List*, IMDb ...................................................................................19

*Melania, the Lawsuit: An Errant Text*, Michael Wolff, Jul. 01 2026.............................................9

*Melania, the Lawsuit: The Judge Rules Against Us-Or Does She?*, Michael Wolff,
    May 24, 2026 ...................................................................................................................19

*Melania Trump Lives in New York-Not With Her Husband*, Michael Wolff, Feb.
    12, 2026 ............................................................................................................................19

*Melania Trump Probably Isn't Worried About Me . . . But she should be,* Michael
    Wolff, Jan. 10, 2026 .....................................................................................................7, 11

Pre-Argument Statement, *Wolff v. Trump*, Case No. 26-1674 (2d. Cir.), Dkt. No.
    11.1 ...............................................................................................................................11, 16

*The Real Blockbuster Is Not "Melania" the Movie, but Melania the Court Case,*
    Michael Wolff, Jan. 29, 2026 ........................................................................................7, 19

Mrs. Trump[1] respectfully submits this memorandum of law in support of her motion to sanction Plaintiff and Plaintiff's counsel under Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") and Plaintiff's counsel pursuant to 28 U.S.C. § 1927 ("Section 1927"), and to award Mrs. Trump her costs and reasonable attorneys' fees incurred in these proceedings.

**<u>PRELIMINARY STATEMENT</u>**

Plaintiff and his counsel filed this action in order to turn a serious, looming defamation suit against Plaintiff based on his wrongdoing into a fundraising drive and a political spectacle. Plaintiff falsely accused Mrs. Trump of being tied to Jeffrey Epstein's misconduct, and when she demanded a retraction, he did not respond. He instead raced to a New York court to try and get improper, advance approval of his statements, promoted the suit across his own media platforms, and used it to raise more than $836,000,. The Court saw through the maneuver, calling Plaintiff's lawsuit "abusively presented," and a "textbook" example of "bad-faith forum-shopping."

Sanctions are warranted for at least three independent reasons: Plaintiff and his counsel presented factual assertions that lacked evidentiary support, used the federal filings for improper purposes, and continued to press a frivolous use of the Declaratory Judgment Act.

*First*, Plaintiff and his counsel abusively manufactured a jurisdictional dispute in an attempt to keep the case in New York state court. They falsely alleged that Mrs. Trump was

---

[1] Unless otherwise defined herein, capitalized terms and abbreviations in this memorandum of law have the same meanings as in the Court's May 22, 2026 decision in these proceedings, the citation for which is *Wolff v. Trump*, 2026 WL 1453606 (S.D.N.Y. May 22, 2026) ("MTD Decision").

domiciled there, though the evidence of her longstanding Florida domicile was clear (as Mrs. Trump had already informed them). They wrongly dismissed her Florida voting record and driver's license as an "artifice" and a "feint," and replaced them with offensive, false conjecture about her marriage, her son, her father, her staff,and her private life. The Court thus found that Plaintiff and his counsel had tried "to manufacture a dispute of fact at the threshold of [the] case" through a "specious mischaracterization of the extremely limited record."

Plaintiff's "specious" factual submission is exactly what Rule 11 forbids. The Court called it a "morass of grasping and scurrilous frivolity" that read like "the salacious speculation of tabloid headlines." Most of that submission had nothing to do with domicile. It placed unsupported personal accusations into a public filing—all to feed Plaintiff's wrongful publicity campaign—and his demand for jurisdictional discovery threatened only more of the same baseless attack against Mrs. Trump.

*Second*, Plaintiff used this litigation for improper purposes. He wielded it to try to wrest control of Mrs. Trump's anticipated claims, to seize her choice of forum, to publicize false accusations about her and her family, to threaten invasive discovery, and to solicit hundreds of thousands of dollars from the public. Rule 11 does not permit court filings to be used to harass, to run up costs, or to pursue political and commercial ends untethered to any legitimate dispute. Even at present, after his case was rightfully dismissed, Plaintiff continues to press and publicize his scandalous claims—particularly the tabloid-esque speculation of the Korzenik Declaration—on appeal and to use that filing to continue to attack Mrs. Trump.[2]

---

[2] *Available at* https://michaelwolffnyc.substack.com/p/melania-the-lawsuit-an-errant-text.

5

*Third*, Plaintiff's central claim was frivolous.  He improperly invoked the Declaratory Judgment Act to try and preempt Mrs. Trump's anticipated tort suit. and force her to litigate on his timetable.  The Court called this "an abuse of the Declaratory Judgment Act," and condemned the "gamesmanship" driving his tactics.  Rule 11 forbids exactly this: using a declaratory action to end-run an imminent coercive suit—all the more so after Mrs. Trump warned him that the claim had no basis in existing law. Rule 11(b)(2) permits sanctions against counsel for continuing to advocate that procedural theory after notice, without requiring the Court to decide the underlying defamation or anti-SLAPP merits.

Mrs. Trump gave Plaintiff and his counsel every chance to stop.  Her Rule 11 notice identified the defective declaratory claim, the unsupported jurisdictional assertions, and the improper purposes evident on the face of their own filings.  They refused.  They moved to remand, opposed dismissal, repeated their unsupported positions, and pressed for intrusive discovery. Counsel's choice to multiply the proceedings after that warning also independently warrants sanctions under Section 1927.

Every stage of this litigation violated the obligations imposed by Rule 11.  Plaintiff and his counsel asserted a legally frivolous claim, propped it up with factual contentions that lacked any evidentiary support, and used them to run a political and commercial campaign.  They should pay for Mrs. Trump's fees and expenses incurred for the process they abused.

## FACTUAL BACKGROUND

**A.    Before this Case Was Filed, Mrs. Trump's Counsel Demanded That Plaintiff Retract His Defamatory Statements.**

Starting in July 2025, Plaintiff publicly and falsely suggested that Mrs. Trump was tied to the crimes of Jeffrey Epstein.  *See, e.g.*, Compl., pp. 6–12, ¶¶ 8–13 (quoting and summarizing

allegations of links between Epstein and Mrs. Trump); Demand Letter (collecting allegations).[3] Plaintiff wrongly claimed Mrs. Trump was "[v]ery involved in [the] Epstein Scandal," "'very involved' in Epstein's social circle," that she had met her husband through Epstein, and that she is in a "sham marriage" that is "part of the" Epstein scandal.  Demand Letter, pp. 1–2.

On October 15, 2025, Mrs. Trump's counsel sent Plaintiff the Demand Letter, a pre-action notice under Florida's anti-defamation law.  The letter identified these statements and others like them as defamatory, demanded a retraction and an apology, and warned that Mrs. Trump was prepared to sue if Plaintiff refused.  Demand Letter, pp. 1–4.

> **B.**     **Plaintiff Abusively Sued Mrs. Trump in New York State Court and Turned It into a Publicity and Fundraising Machine.**

Plaintiff never answered the Demand Letter or tried to resolve his wrongdoing.  Instead, less than a week later, on October 21, 2025, he sued Mrs. Trump in New York Supreme Court. *See* MTD Decision, *1.  His Complaint pleaded two counts: Count I sought an improper declaratory judgment that the statements in the Demand Letter were not libelous, Compl., pp. 6–12, and Count II sought an improper declaration that any prosecution of those claims would violate New York's anti-SLAPP law, and expose Mrs. Trump to liability for his costs, fees, and damages, *id.*, pp. 12–14.

Though the two counts were nominally defensive, it was plain that Plaintiff's real aim was harassment.  He boasted that suing Mrs. Trump gave him "subpoena power" that he "intend[ed] to

---

[3] Because the paragraph numbering in the complaint resets after each main header, citations herein to the complaint refer first to the page number(s) in the bottom right corner, and then to the relevant paragraph(s) appearing on the cited page(s).  References to the "Demand Letter" are to the October 15, 2025 letter from Mrs. Trump's counsel to Plaintiff attached as Exhibit A to the Complaint (the Complaint and its exhibits are available at ECF No. 1-1).

exercise fully and expeditiously" against President Trump, Mrs. Trump's husband. Compl., p. 3 ¶ 10.

Plaintiff never properly served Mrs. Trump. *See* MTD Decision, *9 n. 3. But that did not stop him from using the lawsuit in his public campaign against Mrs. Trump. Soon after filing, he published a stream of articles promoting the baseless suit, and compounding the damages he already caused Mrs. Trump through his defamatory statements. *See, e.g., Why Melania Trump Is Hiding From Me: Wolff*, Daily Beast, Dec. 18, 2025, *available at* https://www.thedailybeast.com/why-melania-trump-is-hiding-from-me-wolff/; *Suing the First Lady: She Plays Her Hand*, Michael Wolff, Jan. 3, 2026, *available at* https://michaelwolffnyc.substack.com/p/suing-the-first-lady-she-plays-her; *Melania Trump Probably Isn't Worried About Me ... But she should be*, Michael Wolff, Jan. 10, 2026, *available at* https://michaelwolffnyc.substack.com/p/melania-trump-probably-isnt-worried. Plaintiff also launched a GoFundMe soliciting donations to fund the suit, *see Help Michael Wolff in His Legal Fight Against Melania Trump*, Nov. 4, 2025, *available at* https://www.gofundme.com/f/help-michael-wolff-in-his-legal-fight-against-melania-trump, and has collected more than $836,000 through that website.

### C. Mrs. Trump Removed the Case to this Court, Moved to Dismiss, and Served a Rule 11 Safe Harbor Letter.

On December 29, 2025, Mrs. Trump removed the case to this Court. *See* Notice of Removal (ECF No. 1) ("NoR"). Diversity jurisdiction was straightforward: the amount in controversy exceeded $75,000, and the Parties are citizens of different states. *Id.*, ¶¶ 10–16. Mrs. Trump's Florida citizenship was plain to see: Florida has been Mrs. Trump's home since 2019, she has designated it as her primary residence, has held a Florida driver's license since 2021, has registered to vote there since 2019, voted there in every federal election since, and spends most of

her time there when she is not carrying her official duties at the White House in Washington, D.C. *Id.*, ¶ 13. Mrs. Trump then moved to dismiss for insufficient service, lack of personal jurisdiction, and failure to state a claim. *See* MTD Decision, \*1.

Just after serving her motion, on February 6, 2026, Mrs. Trump sent Plaintiff a safe-harbor letter under Rule 11 (ECF No. 27-1) ("Safe Harbor Letter").  The letter asked Plaintiff to retract the Complaint's baseless allegation that Mrs. Trump was domiciled in New York, and to dismiss both claims with prejudice as frivolous and improperly motivated.  Safe Harbor Letter, pp. 2–7.

The letter clearly laid out Mrs. Trump's case for sanctions against Plaintiff and his counsel. The letter left no room for doubt about Mrs. Trump's Florida domicile, citing contemporaneous press confirming that she had voted in Florida in every federal election since 2019.  *Id.*, p. 2 & n.2. The Complaint's sworn allegation that both Parties resided in New York—made "under the penalties of perjury"—was therefore demonstrably false. Compl., ¶ 4, Verification.  The letter also identified the suit's hallmarks of bad faith: the Complaint promised invasive discovery, helped promote Plaintiff as well as raise money, and was a blatant exercise in bad-faith forum-shopping. Safe Harbor Letter, p. 6.  The letter also explained that Plaintiff's preemptive declaratory-judgment claim had no basis in law, and served only to try and wrongly force Mrs. Trump "to litigate [her] claims at a time and in a forum chosen by the alleged wrongdoer." *Id.*, p. 2 (alteration in original). The Court later agreed, calling Plaintiff's "brazen attempt to 'short-circuit' a suit by the First Lady in Florida," and "wrest the choice of forum from the real plaintiff" by "preemptively fil[ing] this action in New York" "textbook bad-faith forum-shopping."  MTD Decision, \*22.

The letter set a deadline.  If Plaintiff did not retract his jurisdictional allegations and dismiss his Complaint with prejudice within 21 days, Mrs. Trump would move for sanctions and an award

of her fees.  *Id.*, p. 1.  Further, as Rule 11(c)(2) requires, it also enclosed the sanctions motion she intended to file.  *See id.*, Attachment.

### D.    Plaintiff Ignored the Safe Harbor Letter and Fought Dismissal by Salaciously Speculating About Mrs. Trump's Personal Life.

Plaintiff ignored the Safe Harbor Letter.  Instead, a few days later on February 9, 2026, he filed a combined brief opposing dismissal and cross-moving to remand or, in the alternative, for jurisdictional discovery.  *See* MTD Decision, *2.  His central, meritless, argument for both was that Mrs. Trump was somehow really domiciled in New York—which, he claimed, defeated diversity jurisdiction and subjected her to general personal jurisdiction there.  *See* Opposition (ECF No. 14), pp. 2–9. Plaintiff's claims were false.

Plaintiff did not dispute that Mrs. Trump holds a Florida driver's license or that she has voted in Florida since 2019.  He simply, wrongly, dismissed those facts as an "artifice" and a "feint," Opposition, pp. 5–6, and claimed that they were outweighed by the Korzenik Declaration (ECF No. 15)—a declaration proffered by his own counsel.  *See id.*, pp. 3, 6.  That declaration was a collection of speculation and innuendo unrelated to domicile, apparently offered only to malign and embarrass Mrs. Trump.  Counsel asserted, for example:

- Mrs. Trump's relationship with her husband "has no doubt been diminished if not fractured by his notorious affairs with other women – especially at the time of the birth of their son. . . . The normal and expected reaction of any spouse to such egregious disloyalty, would be to distance themselves significantly from their disloyal partner; and come to terms with them on a more remote practical basis." Korzenik Declaration, ¶ 24.

- "It is also hard to see what the [Florida driver's] license might mean for Mrs. Trump who does not drive or need to." *Id.*, ¶ 27.

10

- Mrs. Trump's change of citizenship from New York to Florida "[l]ikely . . . is being *attempted* to assist Mr. Trump in his efforts to escape the consequences of New York judgments and lawsuits." *Id.*, pp. 8–9 (emphasis in original).

The declaration piled on more conjecture about Mrs. Trump's private life, none of it directly bearing on Mrs. Trump's domicile. Counsel asserted, for example:

- "Mrs. Trump's son Barron Trump is also believed to have his own apartment in Trump Tower." *Id.*, ¶ 10 (emphasis in original).

- "Barron Trump grew up in NYC and before going to NYU he went to Columbia Grammar School in Manhattan." *Id.*, ¶ 12.

- "Mrs. Trump's father, Viktor Knavs, also lives in an apartment in NYC, if not also in Trump Tower." *Id.*, ¶ 13 (emphasis in original).

- "Karen Pasternak is one of Mrs. Trump's personal assistants. She is employed by the Trump Organization. Erica Maestro is also a personal assistant." *Id.*, ¶ 17(b) (emphases in original).

The declaration badly misdescribed the few documents it cited. The Court found that counsel cited an LLC certificate for the unsupported proposition that Mrs. Trump owned an apartment through the LLC, and "falsely claim[ed]" that a process-server affidavit said a Trump Tower doorman confirmed Mrs. Trump lived there. MTD Decision, *8 (citing Korzenik Declaration ¶¶ 6, 9). The Court called those assertions a "specious mischaracterization of the extremely limited record." *Id.* The declaration included additional false assertions about Mrs. Trump's son, father, and staff that the Court found irrelevant to citizenship and unsupported by meaningful citations. *See id.* (citing Korzenik Declaration ¶¶ 10–17).

11

Finally, Plaintiff's counsel falsely argued that if all this did not establish New York domicile, the Court should order "discovery into her true citizenship status." Korzenik Declaration, ¶ 3; *see also* Opposition, p. 1 (seeking "discovery on the issue of citizenship and New York activities of Mrs. Trump").

**E.      The Court Dismissed the Case, Condemning Plaintiff's "Bad-Faith Forum-Shopping" and "Abuse of the Declaratory Judgment Act."**

On May 22, 2026, 22, 2026, the Court dismissed the case—and was very direct in stating that Plaintiff and his counsel had improperly conducted themselves in litigating it.

The Court held that Plaintiff's attempted use of a declaratory judgment to preempt Mrs. Trump's Florida suit was an "abuse of the Declaratory Judgment Act." MTD Decision, *22. The Act may not be used "to preemptively defeat actions grounded on tort claims involving rights already accrued by reason of alleged wrongful conduct." *Id.* The Court found that was exactly what Plaintiff did.. *Id.* By suing in New York rather than Florida to gain a "procedural advantage," Plaintiff had "abusively presented" his suit, engaged in "textbook bad-faith forum-shopping," and compounded it by seeking remand after removal—leaving the case in a "posture of profound confusion." *Id.* at *1, *22–23.

The Court was equally blunt about Plaintiff's baseless domicile arguments. Those arguments, the Court found, rested on "an unspecified admixture of personal knowledge or information and belief"—reason enough "to disregard the whole thing." MTD Decision, *8 (cleaned up). Worse, the declaration's irrelevant speculation about Mrs. Trump's private life was a "morass of grasping and scurrilous frivolity," no better than "the salacious speculation of tabloid headlines," and counsel's few record citations amounted to "specious mischaracterization." *Id.*

On June 5, 2026, Mrs. Trump sought a pre-motion conference on an anticipated sanctions motion (ECF No. 27). The Court issued an order granting the conference on June 16. ECF No.

29.  Two days later, Plaintiff filed a notice of appeal to the Second Circuit.  ECF No. 32. This Court held the pre-motion conference on July 1, ECF No. 29. The Court then authorized the motion and set a briefing schedule.  ECF No. 34.

The next day, Wolff filed his pre-argument statement before the Second Circuit.  The appeal presses the same false factual allegations, particularly those from "Mr. Wolff's counsel's Declaration . . . identif[ying] [Mrs. Trump's alleged] ongoing family, business and personal ties to NYC."  *Wolff v. Trump*, Case No. 26-1674 (2d. Cir.), Dkt. No. 11.1 (the "Pre-Argument Statement"), Addendum A, p. 2.  The pre-argument statement also presses the same frivolous legal arguments. *Id.*, Addendum A & Addendum B.  It requests the same invasive and improperly-motivated discovery.  *Id.* Addendum B.  And it serves no legitimate purpose other than furthering the harassment of Mrs. Trump.

**ARGUMENT**

Plaintiff filed a patently meritless lawsuit and used it to harass Mrs. Trump in public.  The requested sanctions do not depend on a ruling that Plaintiff's statements were defamatory.  They rest on the unsupported and mischaracterized federal submissions, the use of those papers for improper purposes, counsel's multiplication of the federal proceedings, and the Court's findings that the action itself was abusively presented as textbook bad-faith forum-shopping.  Those independent grounds support sanctions against Plaintiff and his counsel.

**I.      THE COURT SHOULD SANCTION PLAINTIFF AND HIS COUNSEL UNDER RULE 11.**

Rule 11 authorizes sanctions against a party or counsel who makes factual assertions that "lack evidentiary support," uses litigation "for an improper purpose," and advances legal arguments "contrary to existing law." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (quotations omitted).  Plaintiff and his counsel committed all three wrongs.

13

A.   **Plaintiff and His Counsel Made Unsupported Factual Assertions About Mrs. Trump's Family and Private Life.**

Before signing a filing, a lawyer must investigate the facts to confirm they "have evidentiary support." *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996); *see also Perry St. Software, Inc. v. Jedi Techs., Inc.*, 2020 WL 6064158, at *6 (S.D.N.Y. Oct. 14, 2020). A represented party bears the same duty for documents filed in his name. *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 547 (1991) ("[A] represented party who signs his or her name bears a personal, nondelegable responsibility to certify the truth and reasonableness of the document."). Plaintiff and his counsel flouted that duty. To place Mrs. Trump in New York state court rather than in this Court (or in Florida), they relied almost entirely on assertions with no evidentiary support at all.

Plaintiff verified his Complaint "under the penalties of perjury," certifying as true its allegation that both Parties resided in New York. Compl., ¶ 4, Verification. That allegation was false, and demonstrably so. Mrs. Trump has been domiciled in Florida since 2019: she has designated Florida as her primary residence, has registered to vote there since 2019 and voted there in every federal election since, and has held a Florida driver's license since 2021. NoR, ¶ 13. Every one of these facts was a matter of public record when Plaintiff filed his Complaint. And no facts supported the allegation that Mrs. Trump was currently domiciled in New York. Plaintiff nonetheless swore that Mrs. Trump resided in New York, with no evidence to support it. That action was sanctionable.

Plaintiff's counsel participated in Plaintiff's improper domicile allegations through the Korzenik Declaration. Its subject was Mrs. Trump's "domestic life," about which, as the Court observed, "Plaintiff and his counsel know nothing." MTD Decision, *8. In place of "cognizable facts or competent evidence," counsel offered a "flimsy, flawed and unreliable" declaration built

14

on "parasocial people-watching." *Id.* at *8–9.  Counsel speculated, for instance, that Mrs. Trump's marriage had been "fractured" by her husband's "notorious affairs"; that a Florida license meant little because she "does not drive or need to"; that her son "is also believed to have his own apartment in Trump Tower"; and that her father "also lives in an apartment in NYC."  Korzenik Declaration, ¶¶ 24, 27, 10, 13.  None of this had any bearing on Mrs. Trump's domicile, with the Court finding that speculation about Mrs. Trump's son, for example, was "completely immaterial." MTD Decision, *8.

There is no excuse for this conduct.  Mrs. Trump had already told Plaintiff and his counsel—based on seven years of public record—that her Florida domicile was beyond dispute. Safe Harbor Letter, p. 2 & n.2.  Undeterred, Plaintiff and his counsel filed the declaration anyway and dismissed her Florida ties as an "artifice" meant "to assist Mr. Trump in his efforts to escape the consequences of New York judgments and lawsuits."  Korzenik Declaration, pp. 8–9.

The Court rightly called that accusation "scurrilous," and found its lack of support "palpable."  MTD Decision, *6, *8.  Even now, Plaintiff does not dispute the underlying facts. He argues only that they are legally insufficient for sanctions or, at best, that his claims were "enough to warrant discovery."  Pre-Motion Response Letter (ECF No. 28), p. 3.  That misses the point. A request for discovery does not permit counsel to misdescribe existing documents, swear to unsupported facts, or use immaterial personal speculation to manufacture a factual dispute. Plaintiff's filings were replete with unsupported, often outlandish statements about Mrs. Trump's personal life to which Plaintiff's counsel swore under penalty of perjury, *see supra* pp. 14 –15, and the "palpable" lack of factual support for them, MTD Decision, *8, violates Rule 11 regardless of Plaintiff's legal position on domicile.  *See Levine v. F.D.I.C.*, 2 F.3d 476, 479 (2d Cir. 1993)

15

(upholding sanctions for "baseless factual allegations" made in attorney declaration in support of personal jurisdiction).

**B.    Plaintiff and His Counsel Brought This Lawsuit for Improper Purposes.**

Rule 11 also forbids using litigation for improper purposes—"delay, harassment or increasing the costs of litigation." *McLoughlin v. Altman*, 1995 WL 640770, at *1 (S.D.N.Y. Oct. 31, 1995). Plaintiff's suit was filed for an improper purpose in two independent ways.

First, Plaintiff used this litigation as one front in his long-running, multimedia project of publicly harassing Mrs. Trump and monetizing that harassment.[4] Every aspect of the litigation served that purpose. The GoFundMe account he used to publicize and finance the suit remains live even after dismissal. *See Help Michael Wolff in His Legal Fight Against Melania Trump*, Nov. 4, 2025.[5] He has published prolifically about the lawsuit both before and after the case was dismissed. *See, e.g.*, *I Know Trump's Goons Are Involved in My Melania Lawsuit,* Michael Wolff, Jul. 3, 2026[6]*; I'm Fighting Melania Trump While Her Husband Is Fighting With His Son*, Michael Wolff, May 25, 2026[7]; *Melania, the Lawsuit: The Judge Rules Against Us—Or Does She?*, Michael Wolff, May 24, 2026[8]; *Melania Trump Lives in New York—Not With Her Husband*, Michael Wolff, Feb. 12, 2026[9]; *The Real Blockbuster Is Not "Melania" the Movie, but Melania*

---

[4] Wolff appears to have published at least 700 articles, videos, and social media posts about Mrs. Trump or her husband over the past year and a half. For illustration, in addition to his obsessive blogging, he hosts a thrice-weekly podcast called "Inside Trump's head" which he frequently uses to attack Mrs. Trump. At the time this Motion was filed, the podcast had 141 episodes. *Inside Trump's Head: Episode List*, IMDb, *available at* https://www.imdb.com/title/tt37898826/episodes/.

[5] *Available at* https://www.gofundme.com/f/help-michael-wolff-in-his-legal-fight-against-melania-trump.

[6] *Available at* https://michaelwolffnyc.substack.com/p/i-know-trumps-goons-are-involved.

[7] *Available at* https://michaelwolffnyc.substack.com/p/im-fighting-melania-trump-while-her.

[8] *Available at* https://michaelwolffnyc.substack.com/p/melania-the-lawsuit-the-judge-rules.

[9] *Available at* https://michaelwolffnyc.substack.com/p/melania-trump-lives-in-new-york.

16

*the Court Case*, Michael Wolff, Jan. 29, 2026[10]. And he told the Court exactly what he was doing: he alleged that he intended to use the suit to seek discovery into Mrs. Trump's supposed ties to Jeffrey Epstein. Compl., p. 3 ¶ 10. As the Court put it, he "manufacture[d] a dispute" about domicile, MTD Decision, *9, then used it to smear Mrs. Trump's family in public filings, to raise funds, and to demand discovery into her private life. *See* Korzenik Declaration, ¶ 3.

Second, the suit was "textbook bad-faith forum-shopping." MTD Decision, *22. If Plaintiff had defenses or counterclaims to the defamation suit Mrs. Trump intended to bring in Florida, his remedy was to raise them there. Instead, he tried to "short-circuit" her suit and "preempt the forum choice of the plaintiff to the coercive action," gaining "an undue procedural advantage." *Id.* (quotations omitted); *see id.*, *1, *22 (condemning the "tactical gamesmanship" that "animates his litigation tactics"). Plaintiff's "bad-faith forum-shopping" is sanctionable. *See, e.g.*, *China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc.*, 2003 WL 21982477, at *8 (C.D. Cal. Mar. 12, 2003) (finding Rule 11 sanctions appropriate where "Defendant's purpose in filing its suit was to avoid the forum that it knew from Plaintiff's correspondence that Plaintiff would select").

Plaintiff has no real answer. He says only that "there can be no bad-faith gamesmanship" because "the law permits the causes of actions [sic] asserted here." Pre-Motion Response Letter, p. 3. But the Court held that the law ***does not permit*** his claim. MTD Decision, *22. Regardless, bad-faith gamesmanship does not need a meritless claim to be sanctionable; each type of misconduct is independently sanctionable under Rule 11. As the Court explained at length throughout the MTD Decision, Plaintiff's bad-faith attempt to "short-circuit" Mrs. Trump's choice of forum is misconduct enough by itself.

---

[10] *Available at* https://michaelwolffnyc.substack.com/p/melania-michael-wolff-court-case.

### C. Plaintiff and His Counsel Pressed a Patently Meritless Legal Claim to Prop Up Their Forum-Shopping.

Finally, Rule 11 bars legal arguments unsupported by existing law or by a good-faith argument to change it. *See Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002). Plaintiff's only substantive claim broke that rule. He sought a declaratory judgment that his past statements about Mrs. Trump were not defamatory—asking, as the Court put it, "the Court to bless as non-tortious certain public statements he [had] previously made about the First Lady." MTD Decision, *22; *see* Compl., pp. 6–12 ¶¶ 8–13. The Court refused, holding that the requested use of the Declaratory Judgment Act was "an abuse," a "brazen attempt" to "short-circuit" Mrs. Trump's anticipated coercive action, and "textbook bad-faith forum-shopping." MTD Decision, *22.

The abuse was plain. The Declaratory Judgment Act does not license a would-be tortfeasor to win advance absolution for statements he has already made. Yet that is exactly what Plaintiff sought—a ruling blessing his past accusations so that he could defeat Mrs. Trump's accrued defamation claim before she could bring it. The Court recognized the maneuver for what it was, and Plaintiff cited no authority permitting it. *Id.*

Plaintiff and his counsel also knew better. Mrs. Trump's Safe Harbor Letter told them the claim was legally unsupportable and would draw a sanctions motion. Safe Harbor Letter, p. 4. They pressed it anyway. Worse, they layered on a second declaratory count seeking a ruling that Mrs. Trump would be liable under New York's anti-SLAPP law if she ever pursued her claims— a contingent, anticipatory theory no better supported than the first. *Id.*, p. 5. A claim advanced in the teeth of an express warning, and defended without a single supporting authority, is exactly the frivolous legal contention Rule 11 forbids.

## II.    THE COURT SHOULD ALSO SANCTION PLAINTIFF'S COUNSEL UNDER SECTION 1927.

Section 1927 makes an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" personally liable for the "excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." *Bowler v. United States INS*, 901 F. Supp. 597, 604 (S.D.N.Y. 1995).  In this Circuit, "bad faith is the touchstone." *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991).

Counsel's bad faith runs throughout this case. Counsel filed suit in New York state court to advance Plaintiff's public harassment of Mrs. Trump and to deprive her of her chosen forum— on a legal claim that courts have consistently rejected and for which counsel cannot cite a single supporting decision.  MTD Decision, *22; *see, e.g.*, Opposition, pp. 12–14; Sur-reply (ECF No. 22), pp. 7–9 (citing only cases addressing declaratory judgment claims brought under New York state law); Pre-Motion Response Letter, pp. 2–3.  Once Mrs. Trump removed the case, counsel drove it into a "posture of profound confusion" by resisting removal. *Id.*, *23.  The engine of that effort was the Korzenik Declaration—the centerpiece of counsel's attack on Mrs. Trump's domicile, and a document the Court found to rest on "scurrilous" and irrelevant speculation about a subject counsel admittedly knew nothing about. *Id.*, *6, *8.

Counsel did all of this after the Safe Harbor Letter warned against it.  Above all, counsel filed a declaration packed with baseless and demeaning speculation about Mrs. Trump's family that—even if believed—was "completely immaterial" to the citizenship question it claimed to address.  *See* MTD Decision, *8.  There can be no reasonable dispute that this conduct forced Mrs. Trump to incur additional—and unnecessary—costs.

19

## III.    THE COURT RETAINS AUTHORITY TO IMPOSE SANCTIONS.

This Court's power to sanction misconduct in its own proceedings does not depend on the form or timing of the merits disposition.  The Court may decide this collateral motion despite the end of the case and despite Mrs. Trump's preserved objection to personal jurisdiction.

*The Court's Authority.*    Sanctions are collateral to the merits.  A Rule 11 violation is complete the moment a sanctionable paper is filed.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990).  Ending the case does not erase the burden it imposed on Mrs. Trump and the Court.  *Id.* at 398 ("Baseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay.");  *see De La Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250, 257 (S.D.N.Y. 2003) ("The Court's interpretation of Rule 11 [in *Hartmarx*] was guided by the statutory purpose of the rule—deterring abuses of the judicial system").  The Court may therefore resolve sanctions after the case is over: "Even after dismissing for lack of personal jurisdiction or improper venue, this Court retains the jurisdiction to adjudicate a Rule 11 motion." *Ditto v. Ditto*, 2024 WL 5508217, at *8 n.7 (S.D.N.Y. May 31, 2024) (citing *Hartmarx*, 496 U.S. at 395), *report and recommendation adopted*, 2025 WL 880529 (S.D.N.Y. Mar. 21, 2025).  Indeed, Rule 11 authority survives even if the Court later determines that subject-matter jurisdiction was absent.  *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 141 (2d Cir. 2002) (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 137–39 (1992) and *Hartmarx*, 496 U.S. at 396).  The same is true of Section 1927 authority.  *Fisher Bros. Sales v. United Trading Co. Desarrollo Y Comercio S.A.*, 1987 WL 10391, at *2 (S.D.N.Y. Apr. 28, 1987).

*The Effect of Abstention.* The form of the dismissal does not impact whether earlier filings violated Rule 11 or multiplied proceedings under Section 1927.  The Court abstained so the real dispute could proceed in the right forum; it did not bless Plaintiff's tactics or retract its findings

20

that the case was abusively presented, driven by textbook bad-faith forum-shopping, and built on scurrilous and unreliable submissions.  Sanctions would not turn abstention into a merits ruling or a dismissal with prejudice.  They would instead remedy and deter a separate abuse of this Court's process.  Courts routinely sanction litigants after dismissals—even dismissals without prejudice. *U.S. D.I.D. Corp. v. Windstream Commnc'ns, Inc.*, 775 F.3d 128, 134 (2d Cir. 2014) ("A district court may, for instance, grant an award of costs or attorney's fees or initiate contempt proceedings after a voluntary dismissal without prejudice") (citing *Hartmarx*, 496 U.S. at 395–96); *Accurate Grading Quality Assurance, Inc. v. KGK Jewelry, LLC*, 2014 WL 3302303, at \*4 (S.D.N.Y. July 7, 2014) ("[f]ee awards are often made when a plaintiff dismisses a suit without prejudice") (quoting *Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir. 1985)).  This outcome is appropriate here.

*Personal Jurisdiction*.  A sanctions order will not subject Mrs. Trump to the personal jurisdiction of this Court over the claims filed against her.  Courts in this district have held that "[r]equests for . . . sanctions or attorneys' fees, do not waive a jurisdictional objection where, as here, those objections have been asserted prior to or simultaneously with the request" for sanctions. *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 659 (S.D.N.Y. 1997).  That rule preserves Rule 11's effectiveness: to deter abuse, "[d]efendants who are dismissed for lack of personal jurisdiction must be able to come to court to seek Rule 11 sanctions without subjecting themselves to the court's jurisdiction." *VSA v. Von Weise Gear Co.*, 769 F. Supp. 1080, 1085 n.14 (E.D. Mo. 1991) ("To hold otherwise would greatly diminish the effectiveness of Rule 11." ); *see also Opus Grp., LLC v. Enomatic SrL*, 2012 WL 13134609, at \*8 (S.D. Fla. 2012) ("[M]oving for sanctions pursuant to Rule 11 [] is not extensive enough to waive [a] personal jurisdiction defense.").

21

Consistent with that rule, the Second Circuit has upheld sanctions—for a baseless attorney declaration made in support of personal jurisdiction—imposed after a case was dismissed for lack of personal jurisdiction. *Levine v. F.D.I.C.*, 2 F.3d 476, 479 (2d Cir. 1993). Importantly, courts in this district have repeatedly dismissed cases for lack of personal jurisdiction after defendants moved for sanctions. *See, e.g.*, *(888) Justice, Inc. v. Just Enterprises, Inc.*, 2007 WL 2398504, at *1 (S.D.N.Y. Aug. 22, 2007) (dismissing for lack of personal jurisdiction after defendant moved for sanctions under Rule 11 and Section 1927); *Girl Scouts of the United States v. Steir*, 2003 U.S. Dist. LEXIS 24582, at *1 n.1 (S.D.N.Y. Aug. 29, 2003) (dismissing for lack of personal jurisdiction where defendants moved for sanctions in their motion to dismiss); *Ditto*, 2024 WL 5508217, at *8 n.7 (dismissing for lack of personal jurisdiction where a portion of the motion to dismiss "may be construed as a cross-motion for sanctions pursuant to Fed. R. Civ. P. 11"). The *Howard* rule applies with special force here because Plaintiff's attempts to establish personal jurisdiction through fabrications and frivolous arguments are themselves among the grounds for sanctions. *See PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 461 (5th Cir. 2001) ("we cannot fathom how a motion premised on a jurisdictional objection could simultaneously operate as a waiver of that very objection."). That rule squarely forecloses waiver here. Mrs. Trump preserved her personal-jurisdiction objection in her first responsive motion, as Rule 12 requires, and she has never asked the Court to reach the merits of Plaintiff's claims. This motion seeks only collateral relief for sanctionable conduct in papers filed here, under authority the Court expressly reserved. Seeking that relief is not consent to personal jurisdiction over the underlying declaratory claims; at most it recognizes the Court's power to decide this collateral application. *See Opus Grp.*, 2012 WL 13134609, at *8. The motion neither revives the dismissed claims nor waives the preserved Rule 12(b)(2) defense in any forum.

22

## **CONCLUSION**

For these reasons, Mrs. Trump respectfully requests the Court to (i) sanction Plaintiff under Rule 11 and his counsel under Rule 11 and Section 1927; (ii) award Mrs. Trump the costs and reasonable attorneys' fees she incurred in these proceedings; and (iii) grant any other appropriate relief.  If the Court imposes sanctions, Mrs. Trump will submit a detailed accounting of her costs and fees.

DLA PIPER LLP (US)

Dated: New York, New York
  July 20, 2026

By:  */s/ Caryn G. Schechtman*
   Caryn G. Schechtman
   Steven M. Rosato

Of Counsel:

1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

Alejandro Brito (*pro hac vice*)
Brito PLLC
2121 Ponce de Leon Blvd.
Suite 650
Coral Gables, FL 33134
(305) 520-7633
Abrito@Britopllc.com

caryn.schechtman@us.dlapiper.com
steven.rosato@us.dlapiper.com

*Attorneys for*
 *First Lady of the United States*
 *Melania Trump*

23