**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MICHAEL WOLFF,

Plaintiff,

v.

MELANIA TRUMP,

Defendant.

Case No.: 1:25-cv-10752-MKV

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT MELANIA TRUMP'S MOTION FOR SANCTIONS**

**JASSY VICK CAROLAN LLP**

Matthew L. Schafer
521 Fifth Ave., 17th Floor
New York, New York 10175
Tel: (212) 457-1606
MSchafer@jassyvick.com

*Counsel for Michael Wolff*
*and David Korzenik, Esq.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ... 1

BACKGROUND ... 2

A. The First Lady Threatens Mr. Wolff With Over $1 Billion In Damages ... 2

B. Mr. Wolff's Counsel Attempts To Meet And Confer With The First Lady's Counsel ... 3

C. Mr. Wolff Files This Lawsuit In New York State Court Pursuant To New York Law ... 3

D. The First Lady Removes The Lawsuit To Federal Court ... 4

E. The First Lady Serves A Rule 11 Safe-Harbor On February 6, 2026 ... 5

F. The Court Finds Mr. Wolff's Lawsuit Presents A Case Or Controversy, But Prudentially Abstains From Reaching The Merits ... 6

G. The First Lady Files Her Rule 11 Premotion Letter, Drastically Expanding The Scope of Her Safe-Harbor Letter ... 6

ARGUMENT ... 8

I. THE FIRST LADY IMPROPERLY SEEKS RULE 11 SANCTIONS FOR MATTERS NEVER NOTICED BY HER ... 8

II. IT IS NOT FRIVOLOUS TO ASSERT THAT THE FIRST LADY IS A NEW YORK DOMICILIARY BECAUSE SHE HAS PLEADED SHE IS ONE ... 11

III. THE DECLARATORY JUDGMENT CLAIM IS NOT FRIVOLOUS ... 16

IV. NO IMPROPER PURPOSE EXISTS, AND EVEN IF IT DID, THE NON-FRIVOLOUS CLAIMS INSULATE ANY SUCH PURPOSE FROM SANCTIONS ... 19

V. THE FIRST LADY'S PERFUNCTORY REQUEST FOR SANCTIONS UNDER SECTION 1927 IS UTTERLY DEVOID OF MERIT ... 23

CONCLUSION ... 25

# TABLE OF AUTHORITIES

**Cases**

*Ceglia v. Zuckerberg*,
772 F. Supp. 2d 453 (W.D.N.Y. 2011) .......... 15

*Condit v. Dunne*,
225 F.R.D. 100 (S.D.N.Y. 2004) .......... 22

*Cross & Cross Props., Ltd. v. Everett Allied Co.*,
886 F.2d 497 (2d Cir. 1989) .......... 11, 16, 17

*Dow Jones & Co. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003) .......... 17, 18

*Dow Jones & Co. v. Harrods, Ltd.*,
237 F. Supp. 2d 394 (S.D.N.Y. 2002) .......... 6, 18

*Eastway Const. Corp. v. City of New York*,
762 F.2d 243 (2d Cir. 1985) .......... 16

*Ehrenfeld v. Bin Mahfouz*,
881 N.E.2d 830 (N.Y. 2007) .......... 18

*Ehrenfeld v. Mahfouz*,
489 F.3d 542 (2d Cir. 2007) .......... 18

*Eisemann v. Greene*,
204 F.3d 393 (2d Cir. 2000) .......... 24

*Galva Foundry Co. v. Heiden*,
924 F.2d 729 (7th Cir. 1991) .......... 13

*Gottwald v. Sebert*,
220 N.E.3d 621 (N.Y. 2023) .......... 18

*Graves v. Deutsche Bank Sec., Inc.*,
No. 07-cv-05471 BSJ, 2011 WL 1044357 (S.D.N.Y. Mar. 4, 2011) .......... 8

*Gutierrez v. Fox*,
141 F.3d 425 (2d Cir. 1998) .......... 12

*Hatfill v. Foster*,
415 F. Supp. 2d 353 (S.D.N.Y. 2006) .......... 14

*Holmes v. Winter*,
3 N.E.3d 694 (N.Y. 2013) .......... 18

*Hutter v. Countrywide Bank, N.A.*,
710 F. App'x 25 (2d Cir. 2018) .......... 17

*Intravaia ex rel. Intravaia v. Rocky Point Union Free Sch. Dist.*,
No. 12-cv-0642, 2014 WL 7338849 (E.D.N.Y. Dec. 22, 2014) .......... 11

*Jobar Holding Corp. v. Halio*,
No. 24-2879, 2025 WL 1512574 (2d Cir. May 28, 2025) .......... 24

*Johnson ex rel. U.S. v. Univ. of Rochester Med. Ctr.*,
715 F. Supp. 2d 427 (W.D.N.Y. 2010) ........ 10

*Kiobel v. Millson*,
592 F.3d 78 (2d Cir. 2010) ........ 11

*Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*,
No. 19-cv-3868-ER, 2020 WL 1503558 (S.D.N.Y. Mar. 30, 2020) ........ 13

*Levine v. F.D.I.C.*,
2 F.3d 476 (2d Cir. 1993) ........ 13, 14

*Nemeroff v. Abelson*,
620 F.2d 339 (2d Cir. 1980) ........ 23

*New Oriental Enterprise, PTE, Ltd. v. Mission Critical Solutions LLC*,
No. 20-cv-02327-MKV, 2022 WL 874783 (S.D.N.Y. Mar. 24, 2022) ........ 12, 13, 16, 25

*Oliveri v. Thompson*,
803 F.2d 1265 (2d Cir. 1986) ........ 16

*Penske Media Corp. v. Shutterstock, Inc.*,
548 F. Supp. 3d 370 (S.D.N.Y. 2021) ........ 22

*Penzo v. Consol. Edison Co. of New York, Inc.*,
No. 19-cv-07478-MKV, 2024 WL 4467412 (S.D.N.Y. Oct. 10, 2024) ........ 10, 11, 16

*Ray v. Fariello*,
No. 18-cv-11211, 2024 WL 2785261 (S.D.N.Y. May 10, 2024) ........ 24

*Schlaifer Nance & Co. v. Est. of Warhol*,
194 F.3d 323 (2d Cir. 1999) ........ 8, 9, 23, 24

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
682 F.3d 170 (2d Cir. 2012) ........ 8, 10, 11

*Storey v. Cello Holdings, L.L.C.*,
347 F.3d 370 (2d Cir. 2003) ........ 8, 11

*Sussman v. Bank of Israel*,
56 F.3d 450 (2d Cir. 1995) ........ *passim*

*The Fair v. Kohler Die & Specialty Co.*,
228 U.S. 22 (1913) ........ 21

*The New York Times Company v. Wayfarer Studios, LLC*,
Index No. 162963/2025, Doc. No. 34 (Sup. Ct., N.Y. Cnty. July 27, 2026) ........ 20

*Umeugo v. Barden Corp.*,
307 F. App'x 514 (2d Cir. 2009) ........ 21

*United States ex rel. Hanks v. United States*,
961 F.3d 131 (2d Cir. 2020) ........ 19

*United States v. Int'l Bhd. of Teamsters*,
948 F.2d 1338 (2d Cir. 1991) ........ 23

*West v. Am. Tel. & Tel. Co.*,
311 U.S. 223 (1940) .......... 18

*Xpedior Creditor Tr. v. Credit Suisse First Bos. (USA) Inc.*,
341 F. Supp. 2d 258 (S.D.N.Y. 2004) .......... 20

**Statutes**

28 U.S.C. § 1332(a)(1) .......... 4

28 U.S.C. § 1927 .......... *passim*

C.P.L.R. § 308(5) .......... 4

Florida Statute § 770.01 .......... 2, 3, 22

N.Y. Civ. Rights Law § 70-a .......... 3

Public Law 119–38 .......... 23

**Other Authorities**

*Ainsley Earhardt Interviews Melania Trump*, Fox & Friends
Instagram (Jan. 13, 2025) .......... 13

*Help Michael Wolff in His Legal Fight Against Melania Trump*, GoFundMe .......... 22

Matthew L. Schafer & Tanvi Valsangikar, *The Application of the New York Anti-SLAPP Scheme in Federal Court*, 2 J. Free Speech L. 573 (2023) .......... 20

*Trump v. Internal Revenue Service*,
No. 26-cv-20609, ECF No. 114 (S.D. Fla. July 31, 2026) .......... 9, 11, 25

*Trump v. Mail Media, Inc.*,
Index No. 650661/2017, Doc. No. 2 (Feb. 17, 2017) .......... 11

**Rules**

Fed. R. Civ. P. 1 .......... 7

Fed. R. Civ. P. 11 .......... *passim*

Plaintiff Michael Wolff and his counsel David S. Korzenik, Esq. respectfully submit this memorandum of law in opposition to Defendant Melania Trump's motion for sanctions pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 (the "Motion").

## PRELIMINARY STATEMENT

Michael Wolff reported on the Jeffrey Epstein controversy in New York. For that, the First Lady threatened a lawsuit "for over $1 Billion Dollars." She also targeted his New York publishers. When Mr. Wolff met these staggering threats by asking a court to declare his reporting protected and to declare the threats tortious under New York's recently amended anti-SLAPP statute, the First Lady's counsel served a Rule 11 letter. That letter and this Motion are devoid of merit. Sanctions police abusive litigation, not refusal to surrender to an adversary's version of the facts, law, or procedure. Put simply, opposition is not sanctionable.

***First***, much of the Motion is beside the point because Rule 11 requires notice of *specific* arguments and allegations in *specific* papers. The only paper noticed by the First Lady's counsel was Mr. Wolff's January 7, 2026 response to the First Lady's premotion letter. Yet, the First Lady's counsel now ignore this paper, writing at length about *other* later-filed papers never properly noticed. ***Second***, it was not frivolous to allege that the First Lady is a New York domiciliary because she has represented that she is one and the law presumes that her domicile continues until she proves otherwise with clear and convincing evidence. ***Third***, Mr. Wolff's declaratory judgment claim is not frivolous. Declaratory actions filed in response to serious threats targeting speech present fact-bound questions implicating serious issues of federal statutory and constitutional law. The Second Circuit has entertained such claims without any suggestion of frivolity; this Court should do the same. ***Fourth***, the First Lady's counsel's improper purpose argument rests on a faulty premise that an improper purpose can render a non-

frivolous claim sanctionable. It cannot. In any event, there was no improper purpose: it was the First Lady who threatened Mr. Wolff with a lawsuit seeking more than one billion dollars. Mr. Wolff cannot be faulted for asserting his rights in response. ***Fifth***, the First Lady's perfunctory request for sanctions under Section 1927 fails for want of the specific, heightened showing that provision demands. This Motion is meritless; it should be denied.

## BACKGROUND

### A. The First Lady Threatens Mr. Wolff With Over $1 Billion In Damages

On Wednesday, October 15, 2025, the First Lady's counsel, Alejandro Brito, sent Mr. Wolff, a New York citizen, a demand letter pursuant to Florida Statute § 770.01 (the "Demand Letter"), demanding that he retract and apologize for four sentences in an article claimed to be defamatory *per se* and two sentences claimed to be defamatory by implication. ECF No. 1-1 at 19–21. He also demanded a retraction and apology for three Instagram posts. *Id.* at 20–21. Both the article and the posts relate to President Trump's and the First Lady's association with Jeffrey Epstein. *Id.* Mr. Brito stated that he had obtained concessions from Mr. Wolff's online publisher, book publisher, and the streaming platform for his podcast. *Id.*

Mr. Brito also demanded that Mr. Wolff "make a monetary proposal" for the harm allegedly caused. *Id.* at 22. Short of receiving that proposal, as well as the retraction and apology, Mr. Brito threatened a legal action "for over $1 Billion Dollars [sic] in damages." *Id.* at 23. He demanded a response by the following Tuesday—giving Mr. Wolff less than a week to consider a billion-dollar threat. *Id.* While Mr. Brito sent the Demand Letter pursuant to Florida Statute § 770.01, he did not identify a particular forum and expressly stated: the First Lady "does not agree or admit that only Florida law applies to any claims she might have in connection with or arising out of the Article." *Id.* at 19. He then advanced claims under New York and Florida law—though he principally relied on New York law. *Id.* at 21.

**B. <u>Mr. Wolff's Counsel Attempts To Meet And Confer With The First Lady's Counsel</u>**

To bolster their improper purpose arguments, the First Lady's counsel state that Mr. Wolff "did not respond" to the Demand Letter. *See* ECF No. 39-1 at 7; *see also id.* at 10 ("Plaintiff never answered the Demand Letter . . . ."). That is false. Prior to filing this lawsuit, Mr. Korzenik contacted Mr. Brito to inform him of the effect of the New York anti-SLAPP on the Demand Letter and to provide a draft of the complaint eventually filed in this action, with a point-by-point response to each challenged statement in the Demand Letter. *See* Declaration of David S. Korzenik, Ex. B. Mr. Korzenik then asked for an extension of the notice period under Florida Statute § 770.01 to enable a discussion on a potential resolution of the disputes. *Id.* The parties agreed to a short extension, but the First Lady's counsel would not agree to a subsequent extension based on Mr. Wolff's request that his complaint be given priority in filing. *Id.*

**C. <u>Mr. Wolff Files This Lawsuit In New York State Court Pursuant To New York Law</u>**

On October 21, 2025, Mr. Wolff filed the present complaint in New York State Court. *See* ECF No. 1-1 (the "Complaint"). The Complaint sought a declaration that the statements identified by the First Lady were not actionable as libel, were without basis in fact and law under New York Civil Rights Law § 70-a, and were impairing Mr. Wolff's continued reporting into matters of public concern in this State—the harm that New York Civil Rights Law § 70-a is meant to guard against. *See id.* at 16–17. The Complaint emphasized that the Demand Letter, together with its billion-dollar threat and similar threats by President Trump, fostered "a climate of fear" that intruded on First Amendment rights. *Id.* at 4. Mr. Wolff also alleged that it targeted his protected speech and was made for the purposes of "imped[ing] and chill[ing] future reporting" by him about Epstein, the First Lady, and the President. *Id.* at 5. On that basis, it asserted that the Demand Letter issued pursuant to Florida Statute § 770.01 triggered application of New York's recently amended and broadly construed anti-SLAPP law. *Id.* at 4, 15.

In the Complaint, Mr. Wolff alleged that "on information and belief" the First Lady "spends time in Washington D.C." and "has ties to Florida," but "remains a citizen of New York State." *Id.* at 6. He further alleged that she "has a residence in New York City at Trump Tower on Fifth Avenue," has "numerous ongoing ties to New York County," and "owns and maintains interests in property" here. *Id.* Mr. Wolff, through his agents, twice attempted to serve her through her counsel, who acknowledged he represented her but said he was not authorized to accept service; Mr. Wolff's agents also attempted service at her residence at Trump Tower; and, finally, they mailed multiple copies of the summons and Complaint to the First Lady. *See* ECF No. 19-1 at 5–7. On December 23, 2025, Mr. Wolff filed a motion under C.P.L.R. § 308(5), seeking either an order authorizing alternative service or, in the alternative, an order ratifying prior attempts as sufficient service and deeming service complete. *See id.* at 3.

**D. <u>The First Lady Removes The Lawsuit To Federal Court</u>**

Six days later, the First Lady removed the Complaint to this Court. *See* ECF No. 1. While a notice of removal need only contain a short and plain statement of the grounds for removal, the First Lady's notice characterized the Complaint at length. It stated, among other things, that the Complaint was "frivolous," asserted "false claims," and recited allegations irrelevant to the grounds for removal. *Id.* at 1–3. As for the portion of the notice relevant to the grounds for removal, the First Lady alleged that this Court had subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). *Id.* She alleged that the Complaint's allegation as to her New York domicile was "conclusory, unsupported and false." *Id.* at 4. Instead, her counsel alleged she was a citizen of Florida, stating that she has her primary residence in Florida, votes in Florida, has a Florida driver's license, and "[w]hen not in Washington, D.C.," "spends the *majority* of her time" in Florida. *Id.* at 4–5 (emphasis added). The First Lady did not plead where she spends the remainder of her time or attach proof supporting her allegations. *Id.* at 5.

**E. <u>The First Lady Serves A Rule 11 Safe-Harbor On February 6, 2026</u>**

Just over a month after removing this case to federal court, the First Lady served Mr. Wolff's counsel with a notice pursuant to Rule 11. ECF No. 27-1 (the "Safe-Harbor Letter"). At that time, Mr. Wolff had filed only a single paper in this Court that was signed under Rule 11, namely, Mr. Wolff's January 7, 2026 response, *see* ECF No. 6 (the "January 7 Response"), to the First Lady's January 5, 2026 premotion letter on her contemplated motion to dismiss, *see* ECF No. 4. The January 7 Response discussed: the ordering of motions; the citizenship issue and discovery thereon; the motion for alternative service; the existence of a justiciable controversy; the amount in controversy; and the merits of the declaratory judgment and the anti-SLAPP claims. *See generally* ECF No. 6. The First Lady noticed only a subset of these issues. She first contended that the Complaint's jurisdictional allegations "lack[ed] evidentiary support." ECF No. 27-1 at 3. She argued it was "false" for Mr. Wolff to state that she was a domiciliary of New York and, as support, pointed to allegations in her removal papers that she mischaracterized as "evidence" and "proof." *Id.* The First Lady did not provide any *evidence* establishing domicile, nor would she do so at any point thereafter. Relatedly, she asserted, despite Mr. Wolff's attempts at service and a motion for alternative service, that there could be no personal jurisdiction over her because Mr. Wolff had "no colorable argument" for ignoring the service requirement. *Id.* at 3 n.1. And, she called Mr. Wolff's argument on the ordering of rulings on personal jurisdiction and subject matter jurisdiction "blatantly frivolous."[1] *Id.* at 4 n.3.

The First Lady also argued that the claims were frivolous because they sought "advisory opinion[s]." *Id.* at 5–6. Relying on a non-binding district court opinion, she also asserted that the

[1] Despite her Motion to seek sanctions for *legal arguments* relating to personal jurisdiction, *see* ECF No. 37 at 1–2, the First Lady does not pursue that issue in her Corrected Memorandum.

declaratory judgment claim was frivolous because it improperly sought relief for past tortious statements. *Id.* at 5 (citing *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 426 (S.D.N.Y. 2002)). Finally, she argued that Mr. Wolff's "litigation conduct demonstrates an ulterior motive to harass Mrs. Trump and wrongly profit from that harassment." *Id.* at 7. In making this argument, the First Lady failed to notice anything in Mr. Wolff's January 7 Response and instead referred to Mr. Wolff's state-court Complaint, unidentified social media posts, and Mr. Wolff's stated intention to take discovery relating to the Trump family's connections with Epstein and his accomplices. *Id.* No other safe-harbor letter was ever served.

### F. The Court Finds Mr. Wolff's Lawsuit Presents A Case Or Controversy, But Prudentially Abstains From Reaching The Merits

Following the exchange of premotion letters, the First Lady filed her motion to dismiss or transfer on January 26, 2026. *See* ECF Nos. 8, 9, 10. On May 22, 2026, this Court found that Mr. Wolff's Complaint "does concern a live case or controversy," but dismissed the Complaint "based on prudential abstention." ECF No. 25 at 45. The Court thus explicitly refused to "pass upon the substantive validity of Plaintiff's claims." *Id.* at 35. It made this clear four times over. *Id.*; *see also id.* at 34 (expressing the Court's "firm[] belie[f]" that it should not decide the merits); *id.* at 36 ("the Court merely—and specifically—declines to adjudicate the merits"); *id.* at 37 (similar). Doing otherwise, the Court said, would reward what it viewed as Mr. Wolff's "inappropriate . . . gamesmanship," because, in the Court's view, the claims "are really defenses and counterclaims, which should be resolved in a posture that presents them accordingly." *Id.* at 1, 35. Mr. Wolff filed his notice of appeal from that opinion on June 18, 2026. *See* ECF No. 32.

### G. The First Lady Files Her Rule 11 Premotion Letter, Drastically Expanding The Scope of Her Safe-Harbor Letter

On June 5, 2026, the First Lady filed a premotion letter seeking a conference on her contemplated sanctions motion. ECF No. 27. That letter drastically exceeded the scope of the

Safe-Harbor Letter. ***First***, it cited Mr. Wolff's previously noticed January 7 Response just once, focusing instead on *other papers* filed *after* receipt of the Safe-Harbor Letter and never noticed under Rule 11. *Id.* at 1 (citing (1) Mr. Wolff's notice of motion, *see* ECF No. 13; (2) his memorandum in support of that motion, *see* ECF No. 14; (3) counsel's declaration in support of that motion, *see* ECF No. 15 (the "Korzenik February Decl."); (4) Mr. Wolff's letter regarding the state court record, *see* ECF No. 19; and (5) Mr. Wolff's reply on his motion to remand, *see* ECF No. 22). ***Second***, the letter asserted that Mr. Wolff "refused to retract . . . false claims when presented with proof of their falsity." *Id.* at 2. Despite the gravity of the charge, the First Lady's counsel never identified the false claims or what "proof" she presented. *Id.* As to law, the First Lady's counsel asserted that it was frivolous for Mr. Wolff to argue that the amount in controversy requirement had not been met here even though she did not previously notice that argument in her Safe-Harbor Letter. *See generally* ECF No. 27-1. The First Lady, for the first time, also invoked 28 U.S.C. § 1927. *See* ECF No. 27 at 3. Mr. Wolff opposed. *See* ECF No. 28.

On July 1, 2026, this Court held a premotion conference to discuss "whether it really makes sense to expend the time and the money litigating the issue." *See* Premotion Conference Tr. ("PCTr.") at 4:12–13. While the Court expressed no opinion on the merits, it did caution the First Lady's counsel that before filing a motion, parties should consider the strain a motion places on the court and the costs it imposes on the opposing side and on clients as well. *Id.* at 4:23–5:3; *see also* Fed. R. Civ. P. 1 (prioritizing the "just, speedy, and inexpensive determination of every action"). The Court also reminded the First Lady's counsel that the Second Circuit "frowns" on such motions, that "the standard for prevailing on a motion for sanctions places a

very high burden on the moving party," and that Rule 11 motions are also subject to Rule 11. *See* PCTr. at 6:24–7:1, 7:17–18. Despite the Court's cautions, this Motion followed.[2]

## ARGUMENT

The First Lady should not have filed this motion. She should not have filed it because she cannot carry her "very high burden" to demonstrate that a properly noticed paper violates Rule 11 or Section 1927. *See* PCTr. at 6:22–24. The Motion should be denied.

### I. THE FIRST LADY IMPROPERLY SEEKS RULE 11 SANCTIONS FOR MATTERS NEVER NOTICED BY HER

Rule 11 sanctions may not be imposed unless the party seeking sanctions has complied with Rule 11's strict safe-harbor provision. The First Lady's counsel have ignored it.

The safe-harbor provision is a "strict procedural requirement," *see Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012), grounded in ensuring "the due process rights of any person potentially subject to any kind of sanctions." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 389 (2d Cir. 2003). It requires that "'the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense.'" *Star Mark*, 682 F.3d at 175 (quoting *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999)). The signer must then be given twenty-one days to consider the merits of the motion and, if appropriate, to withdraw the offending paper. *Id.* Only matter "'*explicitly referred to* in the instrument providing notice is sanctionable.'" *Id.* (quoting *Schlaifer Nance & Co.*, 194 F.3d at 334) (emphasis added).

[2] The First Lady's counsel did not complete their filing before the deadline set by the Court. *See* ECF Nos. 34, 39. They also never sought leave to file out of time. *Graves v. Deutsche Bank Sec., Inc.*, No. 07-cv-05471 BSJ, 2011 WL 1044357, at *4 (S.D.N.Y. Mar. 4, 2011). In all events, Mr. Wolff and Mr. Korzenik refer to the late-filed ECF No. 39-1 as the "Corrected Memorandum."

As Mr. Brito has said in his recent defense against sanctions, "[d]ue process requires 'fair notice that [the] conduct may warrant sanctions and the reasons why.'" *See Trump v. Internal Revenue Service*, No. 26-cv-20609, ECF No. 114 at 13 (S.D. Fla. July 31, 2026) (citation omitted).

The First Lady's Motion elides this strict requirement. The timing and the content of the Safe-Harbor Letter cabin the available Rule 11 sanctions. As to timing, the Safe-Harbor Letter was served when Mr. Wolff had filed only one paper subject to Rule 11, *i.e.*, his January 7 Response to the First Lady's premotion letter. Papers that post-date this but were not noticed are not subject to Rule 11 sanctions. *Schlaifer Nance & Co.*, 194 F.3d at 334. As to content, Mr. Wolff's January 7 Response contained several factual allegations and legal arguments. *See supra* 5–6. Despite this, the First Lady's counsel noticed only a single fact (relating to domicile), a handful of legal arguments (several of which she has now abandoned because they are obviously not sanctionable), and various allegedly improper purposes. *Id.* They could have noticed additional allegations or arguments advanced in the January 7 Response, but they did not. They could have also served additional safe-harbor letters noticing *other* allegations or arguments in *later-filed papers*, but they did not do that either. The consequence of the Safe-Harbor Letter's timing and content is straightforward: Rule 11 sanctions are available, if at all, only for the limited matter noticed in the January 7 Response.

The First Lady's counsel's extensive discussion of anything else—and it is extensive—is entirely beside the point. For example, counsel presses at length arguments relating to allegedly "unsupported factual assertions about Mrs. Trump's family and private life." *See* ECF No. 39-1 at 17–19; *see also id.* at 13–14 (same). Except for the allegation that the First Lady remains a New York domiciliary, which was advanced by Mr. Wolff in the January 7 Response and noticed by the First Lady in her Safe-Harbor Letter, the First Lady's counsel *never identified any*

*of these facts*. Having failed to do so and having deprived Mr. Korzenik and Mr. Wolff of the safe harbor, they cannot now seek sanctions based on them.

Strikingly, counsel do not deign to defend in the Corrected Memorandum their obvious non-compliance with the safe-harbor. Instead, they seemingly seek to paper over their disregard for it by making the safe-harbor motion explicitly "without limitation" as to unidentified allegations and arguments. *See* ECF No. 37 at 1–2. This placeholder approach is exactly contrary to the rule that sanctions motions "'must describe the *specific conduct that allegedly violates Rule 11(b)*.'" *See Star Mark*, 682 F.3d at 175 (quoting Fed. R. Civ. P. 11(c)(2)); *see Penzo v. Consol. Edison Co. of New York, Inc.*, No. 19-cv-07478-MKV, 2024 WL 4467412, at *1 (S.D.N.Y. Oct. 10, 2024). Counsel should not be permitted to turn the safe-harbor into an empty vessel into which they can pour whatever they please whenever they please.

The only effort counsel did make to excuse their non-compliance with the safe-harbor is in their premotion letter. ECF No. 27 at 2 n.1 (citing *Johnson ex rel. U.S. v. Univ. of Rochester Med. Ctr.*, 715 F. Supp. 2d 427, 429 (W.D.N.Y. 2010), *aff'd on other grounds sub nom. Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121 (2d Cir. 2011)). According to counsel, *Johnson* stands for the proposition that the notice requirement does not apply to "substantially similar arguments" advanced after receipt of a notice where the party subject to sanctions demonstrated an intent not to withdraw the arguments. *Id.* But *Johnson* does not say that—not at all. First, *Johnson* is about Rule 11's separate motion requirement. *See* 715 F. Supp. 2d at 429. Second, the only arguments at issue in *Johnson* were those previously identified by the party seeking sanctions. *Id.* The First Lady's counsel's reference to "substantially similar arguments" not requiring notice appears to be entirely their own invention. *Id.* Third, even if *Johnson* said what counsel thinks, that reading would conflict with the text of Rule 11 and Second Circuit

precedent. *See, e.g.*, *Star Mark*, 682 F.3d at 175; *see also Intravaia ex rel. Intravaia v. Rocky Point Union Free Sch. Dist.*, No. 12-cv-0642, 2014 WL 7338849, at *6 (E.D.N.Y. Dec. 22, 2014). Finally, it would chill advocacy during a case, forcing counsel to guess whether one argument is similar enough to a previously noticed one to fall within Rule 11's bounds or whether further factual development permits an assertion. This is the kind of guesswork Rule 11 seeks to avoid. For these reasons, the Motion should be denied as to all unnoticed papers.

## II. IT IS NOT FRIVOLOUS TO ASSERT THAT THE FIRST LADY IS A NEW YORK DOMICILIARY BECAUSE SHE HAS PLEADED SHE IS ONE

The First Lady's counsel notice only a single fact: that the First Lady is a New York domiciliary. This allegation is not sanctionable.

A statement of fact can give rise to sanctions only when the "particular allegation is utterly lacking in support." *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010). Even having "scant" support precludes Rule 11 sanctions. *See Penzo*, 2024 WL 4467412, at *2. Put differently, advancing a disputed but supported fact "is not improper and does not violate Rule 11." *Id.* Indeed, Mr. Brito himself has argued that the Rule "'is not intended to chill an attorney's enthusiasm or creativity in pursuing *factual* or legal theories.'" *Trump*, No. 26-cv-20609, ECF No. 114 at 16 (citation omitted; emphasis added). That is why courts must "'resolve all doubts in favor of the signer'" of the paper, here, Mr. Korzenik, *see Penzo*, 2024 WL 4467412, at *2 (quoting *Cross & Cross Props., Ltd. v. Everett Allied Co.*, 886 F.2d 497, 504 (2d Cir. 1989)), and act "with restraint," *see Storey*, 347 F.3d at 387.

The First Lady's counsel improperly seek sanctions on a disputed but supported fact. The fact is supported because it is based on the First Lady's statement in *Trump v. Mail Media, Inc.* that she is "an individual domiciled in New York, New York, residing at 725 Fifth Avenue." Index No. 650661/2017, Doc. No. 2 ¶ 5 (Feb. 17, 2017). It is further supported by precedent

stating that a long-time domicile "is presumed to continue." *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998). As this Court recognized, the First Lady was in the past domiciled in New York, meaning that she "must 'demonstrat[e] . . . [a] change' in domicile" by "clear and convincing evidence." ECF No. 25 at 18, 20. Necessarily, it cannot be sanctionable to allege that the First Lady remains a New York domiciliary prior to any such showing being made.

Nor can it be sanctionable for Mr. Wolff to maintain in the face of the First Lady's *allegations* relating to domicile that she remained a domiciliary of New York. The First Lady never submitted *evidence* disproving Mr. Wolff's allegations. She instead chose to rest on her attorney's allegations now mischaracterized as evidence. ECF No. 39-1 at 13; *see also* ECF No. 27-1 at 3 (mischaracterizing allegations as "irrefutable proof"). This Court's opinion makes clear that the First Lady relied solely on her counsel's allegations. *See* ECF No. 25 at 17. She offered no declaration of her own, let alone the claimed "irrefutable proof" of her domicile. ECF No. 27-1 at 3. Mr. Wolff's argument is that a change of domicile must be demonstrated by *evidence*, not mere allegations. That is a matter that ought to be decided on appeal, not in a Rule 11 posture.

This Court's decision in *New Oriental Enterprise, PTE, Ltd. v. Mission Critical Solutions LLC*, demonstrates why Mr. Wolff's domicile allegation is not sanctionable under Rule 11. There, Plaintiff's counsel swore that defendant "had been arrested and had plead guilty in 1994 in the Northern District of New York for embezzling union pension funds." *See* No. 20-cv-02327-MKV, 2022 WL 874783, at *2 (S.D.N.Y. Mar. 24, 2022). Defense counsel then provided opposing counsel a copy of his client's New York State ID card showing he was only fifteen years old in 1994 and asked that the false allegation be withdrawn. *Id.* Counsel refused, and this Court imposed sanctions because there was no excuse for resisting withdrawing the allegation against someone who could not have committed the alleged offense at that time or age. *Id.* at *7.

The question here is nothing like the black-and-white issue in *New Oriental*. As Judge Posner has taught, "in the age of second homes and speedy transportation, picking out a single state to be an individual's domicile can be a difficult, even a rather arbitrary, undertaking." *See Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, No. 19-cv-3868-ER, 2020 WL 1503558, at *4 (S.D.N.Y. Mar. 30, 2020) (quoting *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991)). The First Lady's counsel's repeated insistence that the public record proves she "has been domiciled in Florida since 2019" does not change this. ECF No. 39-1 at 17–18; *see also* ECF No. 27-1 at 3. Mr. Wolff is no more required to cede his position to counsel's self-serving construction of the "public record" than he is to counsel's allegations—especially considering that the public record tracks Mr. Wolff's pleading. For example, the First Lady told a reporter the very year Mr. Wolff filed this lawsuit, "I will be in the White House. And, you know, when I need to be in New York, I will be in New York. And, when I need to be in Palm Beach, I will be in Palm Beach." *Compare* ECF No. 1-1 at 6 *with Ainsley Earhardt Interviews Melania Trump*, Fox & Friends, Instagram (Jan. 13, 2025), https://tinyurl.com/3udwe7pm. The parties simply dispute, considering this and other facts discussed below, whether the First Lady has really effected a change in domicile. Such common disputes are not sanctionable.

Nor is this case anything like *Levine v. F.D.I.C.*, 2 F.3d 476 (2d Cir. 1993). *See* ECF No. 39-1 at 18–19 (citing same). There, after deposing an opposing party, an attorney filed an amended complaint and an affidavit signed by him that directly contradicted the opposing party's sworn testimony. *Levine*, 2 F.3d at 477–78. When the opposing party served a deposition subpoena on the attorney, he withdrew the affidavit and "substituted a virtually identical affidavit" from his client. *Id.* That affidavit was contrary to the opposing party's testimony and

the client's sworn testimony. *Id.* Considering that the statements were contrary to all sworn testimony, the Second Circuit upheld sanctions for the "blatant disregard of the facts." *Id.* at 479.

In this case, however, there has been no discovery, Mr. Korzenik did not file duplicative declarations, Mr. Wolff never testified contrary to the domicile allegation, and, importantly, materials cited in Mr. Korzenik's February Declaration support the allegation. *See, e.g.*, ECF No. 15 ¶ 2 (listing the First Lady's date of arrival in New York); *id.* ¶¶ 13, 14 (citing *New York Times* article reporting that the First Lady's family members were living at Trump Tower); *id.* ¶ 17(f), (g) (citing sources supporting allegations about the First Lady's New York-based confidants and business associates); *id.* ¶ 18(a)–(b) (citing the First Lady's own statements about New York being her "home" and her "hometown"); *id.* ¶ 19 (the First Lady's own statement that her son wanted to be in New York so he could "live in his home"); *id.* ¶ 20 (citing *Melania* documentary to show the First Lady's close ties to New York, including to Trump Tower, and to important advisors there)[3]; *id.* ¶ 24 (citing news reporting, which, in turn, reports on the "apparent frostiness between the first couple" and the First Lady staying "behind in New York after her husband's presidential inauguration"). Whatever may be said of the domicile allegation, it is not absolutely and directly contrary to evidence as in *Levine*.

A feature of the First Lady's counsel's arguments is a double standard that should not go unnoticed. It is counsel's position that they may freely rely on news reports to support their client's jurisdictional argument, *see, e.g.*, ECF No. 9 at 10 n.3; ECF No. 39-1 at 12, but it is sanctionable for Mr. Wolff's counsel to do so. *But see Hatfill v. Foster*, 415 F. Supp. 2d 353, 361

[3] As explained in his declaration, when referring to service at Trump Tower, Mr. Korzenik intended to refer to the process server's statement in its online portal that the doorman said the First Lady "resides" there. Korzenik Decl., Ex. D ("[D]oorman do not accept and put docs in garbage and they stated subject resides but refused to respond."). As also noted, there cannot be a dispute that the First Lady owns an apartment at Trump Tower through an LLC. *Id.* ¶ 21.

(S.D.N.Y. 2006) (relying on news article to disprove change in domicile). It is also the First Lady's counsel's position that they need not accept Mr. Wolff's allegations, but Mr. Wolff must accept as proven truth and on pain of sanctions opposing counsel's allegations. *But see* ECF No. 25 at 20 (a party asserting a change in domicile "must *prove* it by clear and convincing *evidence*" (emphasis added)); *see also Ceglia v. Zuckerberg*, 772 F. Supp. 2d 453, 455 (W.D.N.Y. 2011) (finding a change of domicile only *after* Mark Zuckerberg submitted an eight-page declaration complete with documentary exhibits). And, it is the First Lady's counsel's opinion that they may rely on mere allegations while chastising Mr. Korzenik and Mr. Wolff for relying "merely" on a declaration. ECF No. 27 at 1.

The First Lady's counsel's double standard is on further display in their refusal to correct their inaccurate statements. In their briefing, counsel flatly state that Mr. Wolff "did not respond" and "never answered" the First Lady's Demand Letter. ECF No. 39-1 at 7, 10. This is false. Mr. Wolff did respond. Korzenik Decl. ¶¶ 11–13. He responded with telephone calls, emails, and a draft complaint that explained statement by statement why the statements identified by the First Lady in her Demand Letter were not actionable. *Id*. ¶ 11. These communications also included discussions about apparent misunderstandings that the First Lady's counsel may have had as to the source of particular allegations. *Id.* ¶ 12. Yet, the First Lady's counsel steadfastly refused to correct their statements on the strained basis that those communications were not substantive enough to constitute a response. ECF No. 42 at 7–8. This Court should decline to attempt to plot the elusive line between what the First Lady's counsel believe is a defensible factual claim and one that is not.

The Motion should be denied to the extent it is based on the domicile allegation.

## III. <u>THE DECLARATORY JUDGMENT CLAIM IS NOT FRIVOLOUS</u>

The First Lady's counsel have all but abandoned any argument that the New York anti-SLAPP claims are frivolous. That leaves only the declaratory relief relating to the First Lady's threatened defamation claim. That claim is not sanctionable.

Legal arguments do not violate Rule 11(b)(2) unless it is "'patently clear that a claim has *absolutely no chance of success*.'" *See Sussman v. Bank of Israel*, 56 F.3d 450, 457 (2d Cir. 1995) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986)) (emphasis added); *see also Cross & Cross Props., Ltd.*, 886 F.2d at 504. This standard "is purposefully high, so as not to stifle legal creativity and zealous advocacy." *Penzo*, 2024 WL 4467412, at *1 (citation omitted). It is meant to give breathing space to "those members of the bar who have dared to challenge the received wisdom, and a rule that penalized such innovation and industry would run counter to our notions of the common law itself." *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985). Further, sanctions under Rule 11(b)(2) run only against a represented party's counsel and not the party himself. *See* Fed. R. Civ. P. 11(c)(5)(A).

The declaratory judgment claim on the defamation threat is not frivolous. Again, the First Lady's counsel ignore the standards governing the motion they bring. They offer instead two free-floating arguments: first, they argue (in the Safe-Harbor Letter at least) that the claim sought an improper advisory opinion; second, they argue that the claim improperly sought a ruling on past conduct. *See* ECF No. 27-1 at 5; ECF No. 39-1 at 21. Neither one has merit.

Initially, the First Lady's counsel's arguments simply recycle their client's motion to dismiss arguments, which is not an appropriate basis on which to seek sanctions without some aggravating factor absent here. *See New Oriental Enter., PTE, Ltd.*, 2022 WL 874783, at *6 (refusing to credit arguments that "simply mirror the contentions in their Motion to Dismiss the Amended Complaint"). It is especially inappropriate here because the Court has already found

that reaching the merits of Mr. Wolff's claims would be imprudent. ECF No. 25 at 34–37. Just as in *Sussman*, this Court should not wade into the merits on a Rule 11 motion where it declined to do so on a Rule 12 motion. *Sussman*, 56 F.3d at 454 (describing procedural history).

The First Lady's counsel's arguments also fail on their own terms. This Court already rejected the argument that Mr. Wolff's claims sought an improper advisory opinion. *See* ECF No. 25 at 33–34. That leaves the lone argument that the declaratory judgment claim is frivolous because it seeks "advance absolution for statements he has already made." ECF No. 39-1 at 21. According to the First Lady's counsel, this claim is contrary to existing authority and is "defended without a single supporting authority," making it "frivolous." *Id.* This is wrong. A party *can* advance a claim without supporting authority. That is how law gets made; Rule 11 says so on its face. Rule 11 only requires that legal claims "are warranted by existing law *or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law*." Fed. R. Civ. P. 11(b)(2) (emphasis added); *see also Hutter v. Countrywide Bank, N.A.*, 710 F. App'x 25, 27 (2d Cir. 2018) (denying sanctions for advancing "novel theories" relating to private rights of action). Indeed, Rule 11 even allows a party to advance "positions that may arguably be at odds with existing precedent." *Cross & Cross Props., Ltd.*, 886 F.2d at 504.

The First Lady's counsel forget that they were the ones who threatened Mr. Wolff with over "$1 Billion Dollars [sic]" in damages, targeted Mr. Wolff's publishers, suppressed his speech published in New York by his New York publisher, *The Daily Beast*, and, concomitantly, threatened to impair his future speech regarding the First Lady and the President by, for example, suggesting discovery into his sourcing. ECF No. 1-1 at 20–23. Others finding themselves targeted for their speech by powerful forces have done similarly to what Mr. Wolff did here, and the Second Circuit has not suggested such claims to be frivolous. *See, e.g.*, *Dow Jones & Co. v.*

*Harrods Ltd.*, 346 F.3d 357 (2d Cir. 2003); *Ehrenfeld v. Mahfouz*, 489 F.3d 542 (2d Cir. 2007). Instead, courts have recognized that such cases entail complex questions of federal statutory and constitutional law. *Dow Jones & Co.*, 237 F. Supp. 2d at 399. They are also fact-bound and must be decided on a case-by-case basis. *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d at 359–60. Though plaintiffs in these earlier cases were unsuccessful, that does not foreclose Mr. Wolff from making his case on the facts here. *Dow Jones & Co.*, 237 F. Supp. 2d at 432 ("The Court is also mindful of the overall significance of the alleged injuries asserted here, and is not indifferent to Dow Jones's efforts to seek a judicial remedy.").[4]

Nor does the result in those cases prohibit Mr. Wolff from making his argument on his facts in this case. Initially, the facts are different. This case does not present international comity issues, as Mr. Korzenik long ago pointed out. *See* ECF No. 6 at 2. True, it may present interstate comity issues, but New York's high court has elevated its citizens' free press rights over those issues in the past. *See Holmes v. Winter*, 3 N.E.3d 694, 698, 704–05 (N.Y. 2013). The same court has recognized the "pernicious" effects of certain libel claims and suggested legislative interventions. *See Ehrenfeld v. Bin Mahfouz*, 881 N.E.2d 830, 834 n.5 (N.Y. 2007). The 2020 anti-SLAPP amendments are exactly that kind of an intervention—and, importantly, they post-date both *Dow Jones & Co.* and *Ehrenfeld*. *See Gottwald v. Sebert*, 220 N.E.3d 621, 633 (N.Y. 2023). As this Court recognized, courts have found that the amended statute raises novel and complex issues of state law, *see* ECF No. 25 at 26 (citations omitted)—issues that, ultimately, are the province of New York state courts to interpret. *See West v. Am. Tel. & Tel. Co.*, 311 U.S.

[4] To suggest that the district court's opinion in *Dow Jones & Co.* renders all similar claims frivolous is to blink at how decisional law works. ECF No. 27-1 at 5. Underscoring this point, the court in *Dow Jones & Co.* found no actual controversy. *See* 237 F. Supp. 2d at 407. This Court, however, came to a different conclusion on the facts here. ECF No. 25 at 33.

223, 236 (1940). There is also no controlling law that absolutely bars the claim here. Mr. Wolff and Mr. Korzenik believe that, when tested on the merits, their understanding of the law is the correct one, but in all events, they should not be punished if that argument were ultimately rejected. To do so would cripple the development of the law.

If the First Lady's counsel's arguments here demonstrate anything, they demonstrate that counsel are unable to distinguish between opposition and sanctionable conduct. One example underscores this point. In the Safe-Harbor Letter, the First Lady's counsel called Mr. Korzenik's position as to the ordering of the jurisdictional analysis "blatantly frivolous." ECF No. 27-1 at 4 n.3. Emblematic of their indiscriminate approach to sanctions, they cited *United States ex rel. Hanks v. United States*, 961 F.3d 131, 137 (2d Cir. 2020), even though *Hanks* altogether refutes the frivolity claim. *Hanks* calls the sequencing urged by Mr. Korzenik—that subject matter jurisdiction should be decided first—the "solid rule," subject only to a few exceptions. *See* 961 F.3d at 137. This Court applied *Hanks* and rejected the First Lady's argument otherwise. ECF No. 25 at 8. The First Lady's counsel accordingly do not press this frivolity claim now, but their citing a case for the opposite of what it holds in their zeal to seek sanctions is telling.

For all of these reasons, Mr. Wolff's claims are not sanctionable.

## IV. NO IMPROPER PURPOSE EXISTS, AND EVEN IF IT DID, THE NON-FRIVOLOUS CLAIMS INSULATE ANY SUCH PURPOSE FROM SANCTIONS

The First Lady's counsel's improper purpose argument fails because, like many of their other arguments, it is foreclosed by Second Circuit law. To obtain sanctions, the First Lady must show frivolousness and an improper purpose. *See Sussman*, 56 F.3d at 459. She cannot do so.

The First Lady argues that the frivolity of Mr. Wolff's claims is proof of an improper purpose. This Court made no finding of frivolity as to the claims, though. Where a "court explicitly refused to address the merits, and dismissed [the complaint] 'without prejudice to the

merits of plaintiff[s'] claims,' thereby allowing them to be pursued" elsewhere, sanctions are not appropriate. *Sussman*, 56 F.3d at 457. Nor should this Court accept counsel's invitation to assess the merits having already prudentially abstained on the Rule 12 motion. The First Lady's counsel never meaningfully grapple with this law or the fact of abstention and instead simply declare that her Motion would not require the Court to determine the merits. *See* ECF No. 39-1 at 24. Because the Court prudentially abstained from addressing the merits, and because a merits decision is necessary to find an improper purpose, sanctions on that ground should be denied.

The First Lady's counsel also contend that Mr. Wolff's selection of New York as a forum is evidence of an improper purpose. *See, e.g.*, ECF No. 39-1 at 15. *Sussman* stands in the First Lady's way. *Sussman*, 56 F.3d at 457. The reason is simple: "Attorneys are not under an affirmative obligation to file an action in the most convenient forum; their only obligation is to file in a proper forum."[5] *Id.* (citation and quotation marks omitted). This is especially so in the context of the New York anti-SLAPP, which, unlike other anti-SLAPP statutes, is "not . . . limited" to being "raised in the form of a defense or a counterclaim to a defamation suit." *See The New York Times Company v. Wayfarer Studios, LLC*, Index No. 162963/2025, Doc. No. 34 at 3 (Sup. Ct., N.Y. Cnty. July 27, 2026); *see also* Matthew L. Schafer & Tanvi Valsangikar, *The Application of the New York Anti-SLAPP Scheme in Federal Court*, 2 J. Free Speech L. 573, 605 (2023). Mr. Wolff was entitled to bring that New York claim and to bring it in New York. *See, e.g.*, *Xpedior Creditor Tr. v. Credit Suisse First Bos. (USA) Inc.*, 341 F. Supp. 2d 258, 268 (S.D.N.Y. 2004) ("The choice of legal theories is a strategic choice to be made by plaintiff, and

[5] The First Lady's counsel intend to exploit Mr. Korzenik's prelitigation communications to prove an improper purpose. ECF No. 42 at 1 (hyperbolically "encourag[ing]" use of those emails in the record). But the Second Circuit rejected that approach in *Sussman*. *See* 56 F.3d at 459 ("Nor do we think it was appropriate for the district court to find that Lewin's prelitigation letters were evidence that the New York complaint was filed for an improper purpose.").

neither the court nor the defendant is permitted to override that choice." (citing *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) (Holmes, J.) ("Of course, the party who brings a suit is master to decide what law he will rely on . . . .")). To be sure, this Court concluded that Mr. Wolff should have asserted his anti-SLAPP claim as a counterclaim rather than affirmatively in this jurisdiction. But whether the amendments displaced that traditional practice is a genuine, unsettled question of state law now on appeal—not gamesmanship, and not a basis for sanctions. *See Umeugo v. Barden Corp.*, 307 F. App'x 514, 517 (2d Cir. 2009) (rejecting district court's disagreement with counsel's strategy as a basis for sanctions).

Moreover, there was a rational basis for filing in New York. The First Lady's threat was targeted at Mr. Wolff, a New York citizen. Mr. Wolff conducts the majority of his reporting from New York. The complained-of material was published in this State. The First Lady targeted Mr. Wolff and his publishers here and negotiated and obtained retractions here against two New York businesses. *See* ECF No. 1-1 at 20. She therefore availed herself of New York law to harm Mr. Wolff's speech rights in New York and threatened exactly that kind of conduct that the New York Legislature has sought to guard against. Nor is this the kind of case where it was an eventuality that a party would file in a different forum. ECF No. 39-1 at 20. Counsel could have continued to pursue this matter in Florida but could have decided to pursue it in New York under New York law on which they also significantly and expressly relied. ECF No. 1-1 at 21–22.

The First Lady's counsel also find an improper purpose in Mr. Wolff's alleged use of the Complaint as a tool for publicity. ECF No. 39-1 at 19. Once again, this is exactly the kind of allegation the Second Circuit rejected in *Sussman*. *Sussman*, 56 F.3d at 459 (rejecting as an improper purpose filing a complaint "to exert[] pressure . . . through the generation of adverse and economically disadvantageous publicity"). It "is not the role of Rule 11 to safeguard a

defendant from public criticism that may result from the assertion of nonfrivolous claims." *Id.* at 459. As explained, the declaratory judgment claim is not frivolous and the First Lady's counsel do not seriously argue that the anti-SLAPP claim is—devoting to it a single throwaway sentence. *Penske Media Corp. v. Shutterstock, Inc.*, 548 F. Supp. 3d 370, 381 (S.D.N.Y. 2021) (rejecting a single-sentence argument). Therefore, sanctions cannot be based on this ground.[6]

Restraint is especially appropriate here, where the First Lady targets with sanctions extrajudicial speech—Mr. Wolff's reporting—with which she disagrees. As the Second Circuit has cautioned, "[U]nless such measures are needed to protect the integrity of the judicial system or a criminal defendant's right to a fair trial, a court's steps to deter attorneys from, or to punish them for, speaking to the press have serious First Amendment implications." *Sussman*, 56 F.3d at 459. Here, no fair trial rights are in issue, and Mr. Wolff's claims are not frivolous. Moreover, the First Lady has not obtained a judgment that Mr. Wolff's reporting is constitutionally unprotected or otherwise tortious. Instead, she has only made threats pursuant to Florida Statute § 770.01 and New York law, and Mr. Wolff has explained why he disagrees. The First Lady should not be permitted by way of Rule 11 to punish Mr. Wolff for his speech in lieu of proceeding on the merits.

Finally, the First Lady's counsel assert that Mr. Wolff's threatened discovery is evidence of an improper purpose. ECF No. 39-1 at 7–9, 15, 20. None of the discovery identified, however, is improper. Mr. Wolff has a due process right to inquire into the substantial truth of those allegations. *See, e.g.*, *Condit v. Dunne*, 225 F.R.D. 100, 109 (S.D.N.Y. 2004). The contemplated

[6] The First Lady's counsel note that Mr. Wolff started a GoFundMe. ECF No. 39-1 at 19. Those funds are held in trust and go exclusively to related litigation fees and costs and if that is no longer needed then to the defense of other matters involving freedom of expression. *See Help Michael Wolff in His Legal Fight Against Melania Trump*, GoFundMe, https://tinyurl.com/ytf93avs. Counsel cites no case for the proposition that this is improper.

discovery relates to the First Lady's relationship with Epstein and the controversy surrounding him. That is precisely what the First Lady put in issue when she sent her Demand Letter alleging that Mr. Wolff's statements relating to those issues were false. This discovery goes to the heart of the claims. Moreover, the subject matter at issue is a matter of Congressional inquiry and legislation in the form of the Epstein Files Transparency Act, Public Law 119–38. The President's and the First Lady's relationship to this controversy is a matter of active public debate and scrutiny—far more reaching and aggressive than the reporting at issue here. The First Lady does not and cannot explain how Mr. Wolff's insistence that he will seek to prove the truth of the statements is evidence of an improper purpose.

In sum, the First Lady has not identified a single improper purpose and, even if she had, it is not a basis for sanctions because this Court never has found Mr. Wolff's claims frivolous.

## V. THE FIRST LADY'S PERFUNCTORY REQUEST FOR SANCTIONS UNDER SECTION 1927 IS UTTERLY DEVOID OF MERIT

The First Lady's counsel's request for sanctions against Mr. Korzenik under Section 1927 occupies a single page and ignores controlling standards. It should be denied outright.

The purpose of Section 1927 is "'to deter unnecessary delays in litigation'" and only applies to a represented party's attorney. *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991). It polices only "unreasonable and vexatious multiplications of proceedings." *Id.*; *see also* 28 U.S.C. § 1927. To support sanctions under Section 1927, a litigant must show both that the claim was "entirely without color," and was "brought in bad faith." *Schlaifer Nance & Co.*, 194 F.3d at 336–37. A claim is "entirely without color" only when "it lacks *any* legal or factual basis." *Id.* at 337. So long as a claim has "'some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim,'" it is not entirely without color. *Id.* (quoting *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980)

(per curiam)). A claim is brought in bad faith where it "can be inferred when the actions taken are 'so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose.'" *Id.* at 338 (citation omitted). While Rule 11 considers objective unreasonableness, Section 1927 measures bad faith from a subjective perspective. *Id.* at 339–40. Therefore, even objectively unreasonable conduct may not be subject to Section 1927 sanctions where counsel had a subjective belief in the merits. *Id.* A finding of subjective bad faith "must be characterized by a high degree of specificity." *Id.* at 338; *see also Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (requiring "clear evidence" of bad faith).

The First Lady's counsel ignore these standards. They simply declare that Mr. Korzenik's "bad faith runs throughout this case." ECF No. 39-1 at 22. To support that remarkable allegation of professional misconduct against a fellow member of the bar, they assert that the claims advanced by him are frivolous, that filing in New York was an improper strategic choice, and that the Korzenik February Declaration is frivolous. *Id.* None of these general accusations—devoid of the specific detail required—can support counsel's undeveloped and gratuitous allegation of impropriety. Nor do this Court's observations regarding "bad faith" forum shopping in the context of the discretionary analysis relating to the declaratory judgment claim, *see* ECF No. 25 at 41, necessarily satisfy the kind of restrictive and specific "bad faith" finding required under Section 1927. *Jobar Holding Corp. v. Halio*, No. 24-2879, 2025 WL 1512574, at *4 (2d Cir. May 28, 2025). Nor can sanctions be imposed on Mr. Korzenik for filing the complaint here in New York state court. *See, e.g.*, *Ray v. Fariello*, No. 18-cv-11211, 2024 WL 2785261, at *4 (S.D.N.Y. May 10, 2024) ("Section 1927 concerns conduct in federal court."). Nor can the alleged lack of merit of the underlying claims support a finding of sanctions here because this Court never entered "judgment as a matter of law against a claim." *Schlaifer Nance & Co.*, 194

F.3d at 337 (emphasis added). It abstained. Even had it, that "is a *necessary*, *but not a sufficient*, *condition* for a finding of a total lack of a colorable basis." *Id.* (emphasis added). That leaves counsel's allegations relating to the Korzenik February Declaration. As discussed above, and in Mr. Korzenik's declaration here, the First Lady's counsel's characterization of that Declaration does not accurately reflect its content or purpose. *See supra* Part II. Mr. Korzenik is cognizant of the Court's view of that declaration, but respectfully intends to challenge it on appeal. In short, counsel have not identified *specific* evidence to support a Section 1927 sanctions order.[7]

## CONCLUSION

This Motion shrugs off the safe-harbor, spurns controlling authority, and sees opposition as sanctionable conduct. It never should have been filed. As Mr. Brito has said in his own defense in another case, just weeks ago, "The use of sanctions here threatens the legal profession, the development of law, and the legal system at large. Lawyers must remain free to advance reasonable positions on novel and politically charged questions without risking their reputations, licenses, and livelihoods. Rule 11 must protect 'doctrinal development, novel legal arguments, [and] cases of first impression.'" *Trump*, No. 26-cv-20609, ECF No. 114 at 11 (citation omitted). The Court should deny the Motion.

---

[7] The First Lady demands to be awarded all her fees. *See* ECF No. 37 at 2. The First Lady is not owed her fees. First, she is not owed fees because sanctions are not appropriate under Rule 11 or Section 1927. *See supra* Parts I–V. Second, even were Rule 11 violated (it was not), sanctions under Rule 11 must be limited to deterring the specific offending conduct. *New Oriental Enter., PTE, Ltd.*, 2022 WL 874783, at *7. Rule 11 "is not a fee-shifting mechanism" as counsel seem to believe. *Id.* (cleaned up; quotation marks and citation omitted). Third, even were Section 1927 violated (it was not either), Section 1927 is limited to "the *excess* costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Here, the First Lady never actually identifies what "excess" costs she seeks to recover. ECF No. 39-1 at 22. The docket in this case had fewer than forty docket entries upon filing this Motion, and just a handful of rote motions one would expect to see. Save for this baseless Motion, there has been no multiplication of proceedings in this case. Should the Court disagree and find that sanctionable conduct has occurred, Mr. Wolff and Mr. Korzenik request to be heard on the quantum of fees.

Dated: New York, New York
August 17, 2026

Respectfully submitted,

**JASSY VICK CAROLAN LLP**

By: *__/s/ Matthew L. Schafer__*
Matthew L. Schafer
521 Fifth Ave., 17th Floor
New York, NY 10175
Tel: (212) 457-1606
MSchafer@jassyvick.com

*Counsel for Michael Wolff and David Korzenik, Esq.*